No. 19-1562

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

JAMES A. LEWIS,
 Plaintiff-Appellant,

v.

ANGELA McLEAN, et al.,
 Defendants-Appellees.

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN
## THE HONORABLE JAMES D. PETERSON PRESIDING

## BRIEF OF THE PLAINTIFF-APPELLANT

U.S.C.A. - 7th Circuit
RECEIVED
APR 29 2019
GINO J. AGNELLO
CLERK

ORAL ARGUMENT REQUESTED

JAMES A. LEWIS #486324
Pro Se
WISCONSIN SECURE PROGRAM FACILITY
P.O. BOX 1000
BOSCOBEL, WI 53805

TABLE OF AUTHORITIES

FEDERAL CASES                                                    PAGE

BENNETT v. TARRANT CTY. WATER CONTROL & IMPROVEMENT DIST. No. 1,
    894 S.W.2d 441, 446 (TEX. CIV. APP. 1995, WRIT DENIED . . . . . . . .  12

BUCKHANON ex rel. J.H. v. ASTRUE, 368 Féd. Appx., 674, 678 (7th Cir. 2010) . . . . 13

CLARETT v. ROBERTS, 657 F.3d 664, 674 (7th Cir. 2011) . . . . . . . . 12

DAVIS v. WISCONSIN DEP'T OF CORR., 445 F.3d 971, 979 (7th Cir. 2006) . . . . 12

EEOC v. CENTURY BROADCASTING CORP., 957 F.2d 1446, 1460 (7th Cir. 1992 . . . . 18

GUZMAN v. JONES, 804 F.3d 707, 713 (5th Cir. 2015) . . . . . . . . 7

KAPELANSKI v. JOHNSON, 390 F.3d 525, 530 (7th Cir. 2004) . . . . . . . 18

KILLIAN v. NICHOLSON, Case No. 17-C-895 . . . . . . . . . 11

LEWIS v. McLEAN, Court of Appeal No. 16-1220 . . . . . . . .  4, 13, 19, 20, 21-i

RICE v. BARNHART, 384 F.3d 363, 370 N.5 (7th Cir. 2004) . . . . . . . 13,16

RUFFIAN v. FULLER, 125 F. Supp. 2d 105, 109-10 (S.D.N.Y. 2000) . . . . . . 27

TRASK-MORTON v. MOTEL 6 OPERATING, L.P., 534 F.3d 672, 681 (7th Cir. 2008) . . 7

WHITEHEAD v. BOND, 680 F.3d 919, 925 (7th Cir. 2012) . . . . . . 12

STATE CASE

STATE v. LEWIS, Case No. 12CF83 . . . . . . . . . . 24,26

U.S.C.
28 U.S.C. § 1291 . . . . . . . . . . . . . 1
          § 1331 . . . . . . . . . . . . . 1
          § 1367 . . . . . . . . . . . . . 1
42 U.S.C. § 1983 . . . . . . . . . . . . . 1,2

AMENDMENTS

EIGHTH AMENDMENT . . . . . . . . . . . . . . . 1, 2

WISCONSIN STATUTES

Wis. Stat. § 893.82 . . . . . . . . . . . . . . . 2

Plaintiff's complaint alleged deliberate indifference and excessive force claims under 42 U.S.C. § 1983 and the Eighth Amendment, as well as state law claims for assault, battery, negligence, and medical malpractice. (DKt. 1, p.1) The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1367.

On January 7, 2016, the district court entered summary judgment in favor of the defendants on all of the plaintiff's federal claims and dismissed the remaining state law claims without prejudice. (DKt. 92, p.14; DKt. 94, p.1) Plaintiff filed his notice of appeal on February 4, 2016. (DKt. 97, p.1)

On August 14, 2017 judgment was reached by the U.S. Court of Appeals of the Seventh Circuit affirming in part, vacating and remanding back to the district court. (DKt. 111)

Trial started on January 7, 2019 (DKt. 145) and on January 8, 2019 a verdict was returned in favor of the defendants. (DKt. 150) Judgment was entered in favor of the defendants on January 9, 2019. (DKt. 152)

On January 14, 2019 plaintiff filed a motion to set aside verdict, hold a hearing into the conduct of counsel, and for a new trial. (DKt. 155) Plaintiff supplemented his motion on January 30, 2019. (DKt. 164) And also on January 30, 2019 the district court denied plaintiff's motion to alter or amend judgment on DKt. 155. (DKt. 165)

On February 6, 2019 plaintiff filed a motion for reconsideration of DKt. 165. (DKt. 167)

On March 6, 2019 the court denied plaintiff's supplemental motion, DKt. 164, as well as the motion for reconsideration, DKt. 167 (DKt. 172)

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as this is a timely appeal of right from a final order of a district court.

ISSUES PRESENTED FOR REVIEW

1. Was the plaintiff improperly denied the opportunity to present a pro se motion to reinstate his state-law claim for medical malpractice and for spoliation sanctions?

2. Did the court's confusing and/or contradictory order prevent plaintiff from representing himself at trial?

STATEMENT OF THE CASE

A. Course of Proceedings and Disposition in the District Court.

Plaintiff James A. Lewis (Lewis) suffered an episode of severe, immobilizing back and neck pain while incarcerated at the Wisconsin Secure Program Facility (WSPF). Lewis's complaint alleged, inter alia, that all of the defendants, which included the guards, the prison nurse and the prison doctor, were deliberately indifferent to his serious medical need and left him alone in his cell in excruciating pain for almost three hours before transporting him to a hospital for emergency medical care. He also alleged that the guards used excessive force when they finally removed him from his cell to take him to the hospital.

Lewis's verified complaint was filed on April 16, 2014, and alleged claims under 42 U.S.C. § 1983 and the Eighth Amendment, as well as a variety of state-law claims for assault, battery, negligence, and medical malpractice. (Dkt. 1, p. 1) On October 8, 2014, the district court granted Lewis leave to proceed on his Eighth Amendment medical and excessive force claims as well as his state law medical malpractice claims. The district court denied leave to proceed on the assault, battery, and negligence claims, without prejudice, giving him until October 22, 2014, to comply with the notice requirements of Wis. Stat. § 893.82. Those state law claims were later dismissed on October 29, 2014, due to Lewis's failure to comply with the state statute that governed his ability to bring tort claims against prison officials.

2.

On April 13, 2015, Lewis filed a motion for the appointment of counsel. (DKt. 19, p.1) The district court denied that motion on May 20, 2015. (DKt. 25, p.1) Lewis later filed two motions for reconsideration for help in the appointment of counsel, which were also denied. (DKt. 70, p.1; DKt. 73, p.1)

On July 8, 2015, Lewis filed a motion to compel, as he was seeking video footage that the defendants claimed to not have, as well as answers to certain interrogatories posed to the prison doctor, Dr. Meena Joseph. The parties eventually filed cross motions for summary judgment; Lewis on August 7, 2015 (DKt. 42) and the defendants on August 14, 2015 (DKt. 48). On January 6, 2016, the district court entered summary judgment in favor of the defendants on plaintiff's federal claims, dismissed the remaining state law medical malpractice claim without prejudice, and denied plaintiff's motions for summary judgment, to compel answers to certain discovery and to reconsider the refusal to appoint counsel. (DKt. 92, p.14) Plaintiff filed his notice of appeal on February 4, 2016.

On June 24, 2016, the Court of Appeals, after reviewing the briefs and the record on appeal, concluded that new briefs and oral argument would benefit the court. The court struck the briefs already on file and decided to recruit counsel for Lewis. On July 26, 2016 Joshua Vincent of the law firm Hinshaw & Culbertson LLP was appointed to represent Lewis.

On July 21, 2017, the 7th Circuit issued a judgment affirming in part, vacating and remanding to the district court; also giving Lewis the option of reinstating his medical malpractice claim against McLean. (DKt. 111)

On January 29, 2018, the district court recruited attorney Reed Cornia - Cornia Law, LLC - to represent Lewis. (DKt. 113)

Trial commenced on January 7, 2019 (DKt. 145) and concluded on January 8, 2019, (DKts. 146-149), with the jury returning a verdict in favor of the defendants (DKt. 150). Judgment was entered in favor of the defendants, on January 9, 2019 (DKt. 152).

Lewis filed a motion to set aside the verdict, to hold a hearing into the conduct of counsel, and for a new trial, on January 14, 2019. Lewis also

requested a docket sheet, copies, and information on how to file an appeal (DKt. 158).

On January 14, 2019 the court ordered Lewis's attorney to inform the court, by January 16, 2019, whether he was still representing Lewis. As for the hearing on the conduct of counsel, the court denied that motion, but deferred consideration of the rest of Lewis's motion until the status of Lewis's representation was resolved. (DKt. 160) The court also reminded Lewis that he had a 28-day window - or until February 6, 2019 - to supplement his motion for a new trial.

On January 22, 2019, the court granted counsel's motion to withdraw (DKt. 161), that was requested on January 18, 2019. (DKt. 163)

On January 30, 2019, Lewis supplemented his motion for a new trial, based on the fact that the court should not have refused a motion filed by Lewis, pro se, on November 13, 2018 (DKt. 121), to reinstate his state-law claim, as well as a motion for sanction for spoliation. Also, on September 30, 2019, prior to receiving Lewis's motion to supplement, the court denied dKt. 155, Lewis's motion to alter or amend the judgment. (DKt. 165)

On February 6, 2019, Lewis filed a motion for reconsideration (DKt. 167) that the Court denied on March 6, 2019.


B. Facts Relevant to the Appeal.

After the district court granted the defendants' motion for summary judgment on Lewis's federal claims, and dismissing Lewis's state medical malpractice claim - with prejudice to Lewis refiling the claim in the state court (DKt. 92) Lewis filed an appeal, on February 5, 2016, in the Seventh Circuit Court of Appeal (USCA) (DKt. 95). Lewis was ultimately appointed attorney Joshua Vincent of the law firm Hinshaw & Culbertson, by the Court, to represent him, and the case was argued on April 20, 2017, See LEWIS v. McLEAN, et al., Court of Appeal No. 16-1220.

On his claim, on appeal, with the representation of counsel, Lewis narrowed his claim to focus primarily on the claim of deliberate indifference against

4.

against McLean and Cichanowicz. See USCA decision, dated July 21, 2017, p. 10.

Lewis woke up, on the morning of February 8, 2014, and experienced a sharp pain shooting from the base of his neck to his tailbone when he attempted to get out of bed. On account of the pain he could neither lie back down nor stand up. He remained immobilized by pain for approximately 30 minutes, until about 5:39 a.m. when he was able to lean forward enough to hit his emergency call button. Id. at p. 2

When asked by the guard, Lewis explained that he was suffering from extreme pain and was unable to move. The guard relayed this information to Lieutenant Cichanowicz, a security supervisor, who went to Lewis's cell, where Lewis explained that he was in terrible pain and could neither stand up nor lie back down. Cichanowicz asked if he needed a nurse and Lewis said yes. After around 15 minutes had passed, and no nurse had come, Lewis again carefully eased forward to hit the emergency call button. At around 6:05 am Nurse McLean and Cichanowicz arrived at Lewis's cell. Lewis explained he was in "terrible pain in his back" and "couldn't move". Lewis was told that after count he would be taken to HSU, but that he would have to stand first to come to the cell door to be restrained. Lewis repeatedly cried and begged for help, to the point of finally hollering "what part of I can't move don't y'all understand," at which point Cichanowicz and McLean left the cell. Id. at pp. 3, 8, 16.

When Lt. Shannon-Sharpe, after being briefed by Sgt. Primmer of Lewis's condition, went to Lewis's cell at around 7:30am she - like Cichanowicz before her - told him that his cell could not be entered unless he was restrained. When Lewis said he could not reach the door due to the excruciating pain he was in Shannon-Sharpe conferred with McLean and McLean eventually called Dr. Meena Joseph. Id. at pp. 4-5.

McLean's phone call to Dr. Joseph took place at around 7:40am - over an hour and a half after Lewis had told her and Cichanowicz that he was in severe pain and could not move. Dr. Joseph directed Lewis to be taken to the hospital and at 7:58am Shannon-Sharpe along with five guards entered Lewis's cell, restrained him, placed him in a wheelchair, searched him with a hand-held metal detector (after abandoning the effort to force him into a standing

position for a search when Lewis screamed that they were causing him extreme pain), lifted him into a van, and drove him to a local hospital. Lewis was admitted to the emergency room at 8:53 am. Doctors gave him morphine for his back pain, ativan for his agitation, and diagnosed him with muscle spasms of the neck and upper back and myalgia (muscle pain). An hour later Lewis was able to stand and walk again. He was prescribed ibuprofen and a muscle relaxant, and was discharged from the hospital at 10:24 a.m. Id. at p. 5.

After Cichanowicz and McLean had left Lewis's cell, Cichanowicz viewed the video footage from Lewis's cell. Around 6:40 am, Cichanowicz told McLean that Lewis had not moved from a seated position on his bed since 5:15 am, but still McLean did nothing. Id. at p. 4

Lewis filed his lawsuit two months later, naming defendants Cichanowicz, Shannon-Sharpe, McLean, Joseph and the five guards. He claimed that all of the defendants had shown deliberate indifference to his severe back pain by delaying his access to medical care, and that Shannon-Sharpe and the five guards had been indifferent to his pain because they restrained him and did not take him to the hospital on a stretcher. Lewis also claimed that Shannon-Sharpe and the guards had used excessive force when restraining and transporting him to the hospital. Additionally, he asserted state-law medical malpractice claims against McLean and Joseph. Id. at pp. 5-6.

During discovery Lewis made several requests for counsel, that were denied. He also asked for "[a]ll video footage of the Plaintiff in his cell on February 8, 2014," but the defendants released only 24 minutes of clips run together in a single file, which Lewis could view by contacting the prison's complaint examiner. The first eighteen minutes show snippets of what occurred in the cell between 7:12 and 8:00 am, including Lewis sliding off his bed to the floor; the last six minutes show Lewis being removed from the cell. Id. at p. 6.

Lewis moved to compel discovery, explaining that he believed additional video evidence existed because of a notation Nurse McLean had written in her progress notes from February 8 in which she wrote Cichanowicz had called her called her at 6:40 am (thirty minutes after she and Cichanowicz had met with Lewis) and said that recorded video from his cell showed Lewis sits up

"from lying position" at 5:15 am and "then not move again" except when "leaning forward to push intercom button." In response, their lawyer instead insisted that the defendants were "not in possession of any other video evidence depicting Lewis on the date of the subject incident". Id. at pp. 6-7.

In his complaint, Lewis explains that when he talked to Cichanowicz and McLean he was "sobbing and crying" because of his back pain and the "frustration of trying to get them to understand" his need for medical care. Id. at pp. 7-8.

Cichanowicz, in his declaration, states that he never ordered an emergency cell extraction because he "did not observe a medical emergency that required an emergency extraction." And in her declaration, McLean similarly avers that, after meeting with Lewis around 6:00 a.m., she "did not believe Lewis had an urgent medical need that required emergency assistance." Id. at pp. 9-10.

The Court found that: "a jury reasonably could find that Cichanowicz and McLean exhibited deliberate indifference by delaying Lewis's treatment for approximately one and a half hours — the time that passed between their learning of Lewis's condition and Dr. Joseph's directive prompting action — thus causing Lewis unnecessary suffering." Id. at p. 13

The Court also found: "In their declarations, Cichanowicz and McLean both aver that they did not believe Lewis needed emergency assistance, BUT A JURY REASONABLY COULD DISBELIEVE THEM GIVEN DR. JOSEPH'S UNEQUIVOCAL OPINION THAT LEWIS SHOULD BE TAKEN TO THE EMERGENCY ROOM and the disparity between Cichanowicz's inaction and the initiative demonstrated by Shannon-Sharpe." Id. at pp. 14-15. (emphasis added)

The Court further found: "On a closing note, we are troubled by the failure to preserve the video from Lewis's cell recorded between 5:15 a.m. (when he sat up) and 7:12 a.m. (when the clips provided by the defendants begin.)" See TRASK-MORTON v. MOTEL 6 OPERATING L.P., 534 F.3d 672, 681 (7th Cir. 2008) (noting that courts have imposed spoliation sanctions "where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent"); GUZMAN v. JONES, 804 F.3d 707, 713 (5th Cir. 2015)

("A party's duty to preserve evidence comes into being when a party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant."). The missing recordings, which McLean's treatment notes tell us that Cichanowicz viewed at some point, COULD HELP LEWIS AT TRIAL BY CORROBORATING HIS STATEMENTS THAT HE WAS IMMOBILIZED FOR TWO HOURS AND THAT HE CRIED AND BEGGED FOR HELP WHEN TALKING TO CICHANOWICZ AND MCLEAN. *Id. at p.16.* (emphasis added)

Finally, the Court stated: "On remand, the district court should consider whether to reinstate the medical-malpractice claim against McLean." *Id. at p.18.*

On January 29, 2018 the district court appointed attorney Reed Cornia to represent Lewis. (DKT. 113)  Lewis immediately wrote to Mr. Cornia asking him to reinstate his state claim and to file a motion for spoliation sanctions for the missing video. (DKT. 157, ¶¶ 2, 4)

After not receiving a response Lewis had several family members contact Mr. Cornia to tell him of Lewis's wishes but they were only able to leave messages, none of which were returned. (DKT. 157, ¶¶ 2,4)

On April 2, 2018 Lewis received a letter from Mr. Cornia in which he appologized for not getting back with Lewis due to his busy schedule; but informing Lewis of the trial date of January 7, 2019. He addressed the medical malpractice claim saying we may be precluded from pursuing it "based on state-law, specifically the obligation to inform the state within 120 days after [the] injury", but saying he would try to "find a way around this". (DKT. 155, Exh. 4)

Lewis wrote back immediately informing him that that was not the case, and that he already had permission to re-instate the claim. (DKT. 157, ¶¶ 2,4) After not hearing back from Mr. Cornia Lewis continued to write him and have family members call and leave messages - none of which were returned, until Lewis wrote a final letter on September 25, 2018 in which he pointed out that he had written at least four other letters since May 2018 and had received no response; nor had he responded to any calls made by Lewis's family, and Lewis had no idea if he was still representing him or even if he was "alive and well". Lewis stated that this was his last attempt

at trying to contact him, before going to the court himself. Lewis then gave his power-of-attorney's contact information saying if he was too busy to contact Lewis he could call or write her and she would give him the message. Lewis was very clear in the letter that he wanted to reinstate his state claim and wanted Mr. Cornia to motion the court regarding the missing video. (DKT. 155, Exh. 3) Lewis still received no response.

Then, on November 6, 2018 Lewis received an attorney-call, which he wrongly assumed was about his letters and the family calls. Instead Mr. Cornia informed Lewis that Lewis would be giving a deposition the following day, after which immediately expressed concern, stating that in the [April 2, 2018] letter Lewis had received Mr. Cornia said that they would be prepping before the deposition, and they had not prepped. Cornia said that Lewis would be fine. Lewis then asked had he received the letters and phone messages he had been sending over the past months and Mr. Cornia said he had, but had been too busy to respond. (DKT. 55, Exh. 4 ; DKT. 157 ¶¶ 2,4) Lewis, once again informed Mr. Cornia that he wanted to reinstate his state-claim and wanted him to file a motion for spoliation.

On November 7, 2018 Mr. Cornia came to the institution with A.A.G. Rawic-Farr and prior to going in the room Lewis again informed him that he wanted to add the state-claim and wanted the motion for spoliation.

When the deposition started Rawic-Farr said she would be representing the defendants, Lt. Cichonowicz and Nurse McLean, and wanted to know if Lewis had any questions. The following to place — on the record:

A: Yes, I got something to say. You said representing McLean and Cichonowicz?

Q: Right.

A. Right, but the court -- the 7th Circuit approved me, **like I was just telling my attorney**, leave to add the state malpractice suit back to the case, and in the state malpractice, Dr. Meena Joseph is on that case. (emphasis added)

---

[1] James Lewis - plaintiff - is represented by "A" and AAG Rawic-Farr by "Q".

Q: I'll leave that to you and your lawyer.

A: Right. So then-- so who's representing him-- her?

Q: Dr. Joseph has been completely dismissed from the suit.

A: She's been dismissed from the federal claim.

Ms. Ravic-Farr: Here, we can go off the record to talk about this.

(Dkt. 155, Exh. 5, Transcript pp. 4-5)

On November 9, 2018 Lewis, himself, filed a motion to re-instate his state-law claim and for sanctions for spoliation, explaining in his motion that he was allowed to raise the motion pro se because his attorney was only assigned to represent him in the federal case. (Dkt. 121, pp. 3-4)

On November 14, 2018 the court, in a "Text Only Order" stated:

> In a March 5, 2018 order, the court directed plaintiff to state whether he intended to proceed with his medical malpractice claim in addition to his constitutional claim. Dkt. 117. Plaintiff's counsel did not file a response. Now, Plaintiff has filed a motion, without the assistance of his attorney, seeking to reinstate the medical malpractice claim and to obtain spoliation sanctions. Dkt. 121. The court reminds plaintiff that he must refrain from filing directly with the court now that he has counsel. The motions in limine deadline is November 16. Counsel for plaintiff should address the issues raised by plaintiff by that date.

(Dkt. 122)

On November 19, 2018 Mr. Cornia called Lewis at the institution and they discussed the malpractice claim. Lewis assured Cornia that he wanted to follow through on the claim and Cornia said his "good doctor friends" had told him the claim was not "feasible". Lewis told him he had read several cases on the subject and assured Cornia that the case had merit. Lewis said he wanted to go through with the claim, as well as the spoliation motion.

Cornia informed Lewis that the defendants said they were going to turn over the missing video. The phone conversation ended with Lewis again affirming that he wanted to follow through with the state claim. (Dkt. 157, ¶7)

On November 27, 2018 Lewis again wrote to Mr. Cornia, this time about the phone conversation in which Cornia said his "doctor friends" told him the state medical malpractice claim was not feasible. Lewis enclosed, with the letter, a citation to <u>KILLIAN v. NICHOLSON</u>, case No. 17-C-895, stating that a careful reading would show that his claim was "viable". Lewis then detailed his case against Dr. Joseph. Lewis again made it abundantly clear that he wanted to pursue his state medical malpractice claim. Lewis furthermore pointed out the importance of having Dr. Joseph at the trial – which she would be if the state claim was reinstated – saying that because of what the 7th Circuit decided it would be her testimony that would impeach the defendants since she stated Lewis should have been sent to the hospital, and that there was no other option but to do so. (Dkt. 155, Exh. 8)

Also, in the November 27, 2018 letter Lewis expressed concern about the video that Mr. Cornia said the State would be turning over, asking him to make sure that it was video footage from 5:15 am – 7:12 am and not the video they had previously turned over. (Dkt. 155, Exh. 8, p. 3)

On the morning of the trial, January 7, 2019, Mr. Cornia informed Lewis that the defendants had stipulated to Lewis's version of the events that had happened in his cell from 515 am to when the video started since they could not produce the missing video – but this turned out to be not true as they argued as to whether Lewis could move, whether he was sobbing and crying, and whether the nurse made multiple visits to his cell. (Dkt. 157, ¶10

On January 8, 2019, the second – and last – day of the trial Lewis informed his transport officers that he was going to ask the judge if he could take over the questioning of Nurse McLean – the only witness left to be called by the defendants – himself, as he was unhappy with Mr. Cornia's performance and Lewis himself had previously been a nurse and had prepared a set of questions to ask. Minutes later Mr. Cornia came to the holding cell area and Lewis, in front of the three transport officers – made it clear

to Mr. Cornia that Lewis wanted Cornia to ask the court if he could take over. When Lewis entered the courtroom he asked Mr. Cornia what the judge had said and was told the judge said "No", (Dkt. 157, ¶¶ 11-16)

Plaintiff will provide other information in the ARGUMENT where it becomes relevant to the issue at hand.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 59(a) "[a] new trial may be granted if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." CLARETT v. ROBERTS, 657 F.3d 664, 674 (7th Circuit, 2011) (citations omitted). "A new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." DAVIS v. WISCONSIN DEP'T of CORR., 445 F.3d 971, 979 (7th. Cir. 2006) (internal quotation marks omitted). "Although the court examines the evidence to determine whether the jury's verdict was based on that evidence, the court does not make credibility determinations or weigh the evidence." WHITEHEAD v. BOND, 680 F.3d 919, 925 (7th Cir. 2012).

## ARGUMENT

I. THE DECISIONS BY THE COURT MADE THE TRIAL UNFAIR TO LEWIS.

A. Lewis Was Prevented From Filing A Pro Se Motion To Reinstate His State-Law Claim and for Spoliation Sanctions.

When a document is unambiguous, courts must look to the written terms of a document to determine the intent of the parties. BENNETT v. TARRANT CTY. WATER CONTROL & IMPROVEMENT DIST. No. 1, 894 S.W. 2d 441, 446 (Tex. Civ. App. 1995, writ denied) ("In construing a deed, the primary duty of a court is to ascertain the intent of the parties by a fundamental rule of construction known as the 'four corners' rule.")

"The rule of construction applies to the four corners of a decision." See RICE v. BARNHART, 384 F.3d 363, 370 n.5 (7th Cir. 2004); BUCKHANON ex rel. J.H. v. ASTRUE, 368 Fed. Appx. 674, 678 (7th Cir. 2010).

In the court's decision, dated January 29, 2018 the court writes:

> The court has now located counsel. Attorney Reed Cornia of the law firm Cornia Law, LLC, has agreed to represent Lewis, with the understanding that he will serve with no guarantee of compensation for his services. It is the court's intention that the scope of representation extends to proceedings in this court only.[1]

Under footnote 1, the court clarifys:

> [1] "Proceedings in this court" include all matters leading up to a final judgment on the merits, the filing of a notice of appeal, if appropriate, and ensuring that all steps are taken to transfer the record to the Court of Appeals for the Seventh Circuit.

(DKT. 113)

The court was clear as to the scope of Mr. Cornia's representation which extended only "to proceedings in this court". Lewis's state-law claim was not "in this court". The district court dismissed Lewis's state-law medical malpractice claim "without prejudice to plaintiff refiling in the state court". (DKT. 92, p. 14) This Court recognized this very fact when it stated: "Finally, the district court relinquished supplemental jurisdiction over Lewis's claim of medical malpractice". Lewis v. Mclean et al, USCA No. 16-1220, Decision July 21, 2017, p. 10.

Although Lewis was not obligated to rely on counsel to file the motion he so desired counsel to do so, as he believed a motion submitted by counsel would be better drafted than one he did himself. When counsel failed to contact Lewis or respond to his many requests, Lewis filed the motion to reinstate his state-law claim, and for spoliation sanctions, himself. (DKT. 121)

Lewis pointed out, in his motion, that the court dismissed his claim in the

state court and that counsel was only recruited to represent him on his constitutional claim. DKt. 121, p. 3

The district court responded November 14, 2018 stating that on March 5, 2018 the court directed plaintiff to state whether he intended to proceed on his medical malpractice claim in addition to the federal claim, DKT. 122, but that counsel never responded; maybe because counsel knew Lewis had signed a retainer for representation on the constitutional claim, only.

After losing trial, Lewis filed a motion to set aside the verdict, hold a hearing into the conduct of counsel, and for a new trial - on January 9, 2019. (DKT. 155) On January 14, 2019 Lewis's motion for a hearing on the conduct of counsel was denied, and Lewis was given until February 6, 2019 to supplement his motion, (DKt. 160)

On January 30, 2019 Lewis filed a supplemental motion in which he again argued the court erred by not allowing him to file the motion to reinstate his state claim and for spoliation sanctions. Lewis pointed out that on August 17, 2017 the court noted on the docket sheet: " Per 7th circuit Opinion dated 7/21/17, reinstate medical malpractice claim again [sic] McLean ?" (DKT.111) HOWEVER, when Lewis lost summary judgment the court dismissed Lewis's claim against McLean AND Dr. Joseph. (DKt. 164, p.1)

Lewis pointed out that at the time he wrote the motion he had a state and a federal claim and although he had counsel, it was for the state claim ONLY (DKT. 164, p.2) Lewis also suggested that when counsel failed to respond to the March 5, 2018 order asking if Lewis was going to proceed with the state claim counsel forfeited all rights to represent Lewis, therein. (DKt. 164, p. 2)

Also, on January 30th, 2019, prior to receiving the motion to supplement, the court rendered a decision on whether Lewis should have been allowed to represent himself, (DKt. 165), Denying Lewis's motion to alter or amend judgment. Id.

On February 6, 2019 Lewis filed a motion for reconsideration, pointing out that the January 30th decision was premature, as it did not take into account the motion to supplement. (DKt. 167) Lewis further brought to the court's attention that the court's intention [was] that the scope of [counsel's] representation extends to proceedings in this court only" (DKt. 113) and that the only

14.

proceeding in the court was the constitutional claim.

The district court entered a final decision, on March 6, 2019 stating:

> I cannot consider pro se motions when the party is repre-
> sented by counsel, so I asked plaintiff's counsel to address
> the issues Lewis raised. Dkt. 122. On November 20, plaintiff's
> counsel filed a response that stated: "After consultation
> with Mr. Lewis, we will be withdrawing his motion to rein-
> state the state medical malpractice claim. Mr. Lewis still has
> concerns about a missing video, however opposing counsel
> and I have spoken and will continue to work on this
> issue." Dkt. 135. I had no reason to doubt plaintiff's counsel's
> representation that Lewis had agreed not to proceed on the
> medical malpractice claim until Lewis's post-trial motions.
>
> In his supplement, Lewis contends that I should have discount-
> ed his counsel's representation on November 20 and instead
> treated his pro se motion to reinstate as properly filed. But I
> had no reason to think that plaintiff's counsel's later-filed
> statement wasn't accurate. Nor would it be proper for me to
> entertain pro se filings submitted by a represented party.
>
> Lewis contends that his counsel represented him on his federal
> claim only. He says that at "[t]he court only recruited counsel
> for the federal lawsuit and Lewis only signed a retainer for
> the federal suit. Therefore, Lewis was representing himself in
> the state-law claim [and was] entitled to file the state-claim
> on his own." Dkt. 164, at 2; see also Dkt. 167, at 3. That is not
> accurate. I recruited counsel to represent Lewis in all of
> his claims before this court arising out of the events at issue
> in this case — federal and state alike.

(Dkt. 172, pp. 2-3).

The court has a lot of latitude when it comes to how he runs his court,
but he can't change the rule of law. Where he now says he "recruited counsel
to represent Lewis 'in all his claims' before this court arising out of the

events' at issue in this case — state and federal alike' that is not what is in the "four corners" of his original decision. The original decision was: "It is the court's intention that the scope of representation extends to **proceedings in this court only**." (DKt. 113) (emphasis added). Furthermore, the court put a footnote in to explain exactly what it meant, saying:

> "Proceedings in this court" include all matters leading up to a final judgment on the merits, the filing of a notice of appeal, if appropriate, and ensuring that all steps are taken to transfer the record to the Court of Appeals for the Seventh Circuit. *Id.*

Lewis reminds this Court that the district court's decision was written for him — not his attorney — and as such it was meant for Lewis to interpret it with the understanding of a non-attorney, thereby prompting the court to be very specific in letting Lewis know, via footnote, exactly what "Proceedings in this court" entails.

If the court had meant for the "scope of representation" to include "all of [Lewis's] claims before this court arising out of the events in this case — federal and state alike" then the court should have put that in its decision, and since it is not in the "four corners" of the decision then Lewis's counsel representation only extended — per the court's decision — to the proceeding in that court only — Lewis's constitutional claim — allowing Lewis to raise the motion to reinstate his medical malpractice and spoliation sanction claims, himself. See _RICE v. BARNHART_, 384 F.3d 363, 370 n.5 (7th Cir. 2004) "The rule of construction applies to the four corners of a decision".


B. The Court's Confusing and/or Contradictory Order Prevented Plaintiff From Representing Himself At Trial?

When Lewis filed his pro se motion, on November 14, 2018, to reinstate his medical malpractice claim and for spoliation sanctions the court replied in a TEXT ONLY ORDER:

> The court reminds plaintiff that he must refrain from filing directly with the court now that he has counsel.

(DKt. 122).

On January 14, 2019, after losing at trial, Lewis filed a pro se motion to set aside the verdict, hold a hearing into counsel's conduct, and for a new trial (DKt. 155) to which the court responded: I cannot consider a pro se motion while Lewis is still represented by counsel. (DKt. 160, p.1). See also DKt.

Yet, on January 8, 2019, Lewis did what the court said he must do— he asked his attorney to motion the court to allow Lewis to represent himself, and according to the court:

> The only argument that Lewis makes that *doesn't* concern the effectiveness of his counsel concerns his alleged request on the second day of trial to represent himself and conduct his own cross-examination of defendant Angela McLean. According to Lewis, he told his counsel "to ask the court if he could cross-examine McLean himself" on the morning of January 8. DKt. 155, at 18. Lewis says that later, just as trial was about to start, his counsel told him that "the judge would not allow it." Id. at 19. Lewis says that "the court erred when it did not hold a colloquy to find out what Lewis's issues were when it refused to allow Lewis to represent himself and cross-examine McLean" Id. But I never received any request from Lewis or his counsel indicating that Lewis wished to conduct the cross-examination himself. Nor does the transcript indicate that anyone ever made such a request. If Lewis wished to proceed pro se on the second day of trial, he should have brought that issue to my attention at that time, not in a post-trial motion.

DKt. 165, pp. 2-3.

First the court says that while Lewis is represented by counsel he cannot bring — not one, but two— motions before the court (DKt.160,p.1; DKt.172,p.2); but then the court says that Lewis — while still represented by counsel— is allowed to bring forth a motion for self-representation.

Either Lewis is allowed to bring pro se motions before the court, while represented by counsel — in which case Lewis's motion to reinstate his state-law claim, and for spoliation sanctions should have been accepted;

or Lewis must bring motions to the court through his attorney — which he attempted to do.

Furthermore, the Court stated:

> I had no reason to doubt plaintiff's counsel's representation that Lewis had agreed not to proceed on the medical-malpractice claim until Lewis's post-trial motions.

DKt. 172, p. 3.

Lewis simply states: There was no reason to doubt plaintiff's counsel's representation that the court would not allow Lewis to cross-examine McLean until the court ruled on his motions.

Lewis did not recruit counsel, himself; but instead, counsel was recruited by the court. If the court had no reason to doubt counsel's "representations" then neither does Lewis.

Lewis did only what the court said he must do. He went through his attorney to file a motion with the court. Now that the court has changed its position to now say that Lewis was allowed — even while being represented by counsel — to raise a motion himself, Lewis should not be penalized for failing to do so.


C. The Actions of the Court Denied Lewis a Fair Trial.

See KAPELANSKI v. JOHNSON, 390 F.3d 525, 530 (7th Cir. 2004) (the question under Rule 59 is "whether the verdict is against the weight of the evidence ... or ... for other reasons, the trial was not fair to the moving party" (quoting EEOC v. CENTURY BROADCASTING CORP., 957 F.2d 1446, 1460 (7th Cir. 1992))).

The Seventh Circuit Court of Appeals made two things abundantly clear. First:

> "In their declarations, Cichanowicz and McLean both aver

that they did not believe Lewis needed emergency assistance, but A JURY REASONABLY COULD DISBELIEVE THEM GIVEN DR. JOSEPH'S UNEQUIVOCAL OPINION THAT LEWIS SHOULD BE TAKEN TO THE EMERGENCY ROOM..." (Lewis v. McLean USCA Decision Case: 16-1220 Document: 44, p. 14 Filed July 21, 2017)

The district court considered whether the jury verdict was against the weight of the evidence, and stated:

> I conclude that the jury's verdict is well-supported by the evidence. I will assume, for purposes of this motion, that Lewis proved that [he] had a serious medical need, and that defendants knew of it. The critical question is whether a reasonable jury could find that Cichanowicz and McLean had not demonstrated deliberate indifference. Or, as the jury instructions now phrase the issue, whether Cichanowicz and McLean did not consciously fail to take reasonable measures to provide treatment for Lewis's serious medical need.

> Cichanowicz testified that he sought guidance from the Health Services Unit, which McLean provided. McLean testified that she wanted to render assistance to Lewis, but that security concerns prevented her from entering Lewis's cell. Both Cichanowicz and McLean testified that they had observed Lewis move his extremities, so they knew that he was not paralyzed. There was no indication that he lost consciousness or that he was bleeding, circumstances that, by prison policy, would have prompted an immediate cell entry. The jury could reasonably find that neither Cichanowicz and McLean had consciously failed to take reasonable measures to provide treatment for Lewis's serious medical need.

(DKt. 165, p. 3)

However, these are the same claims that were repeatedly made by the defendants, both in the district court and again in the Seventh Circuit. The defendants' same claim at trial went unchallenged by what the USCA

19.

said Lewis would need so that A REASONABLE JURY COULD DISBELIEVE THEM". — Dr. Joseph's unequivocal opinion that Lewis should be taken to the emergency room.

Had the district court accepted Lewis's motion to reinstate his state-law claim, Dr. Joseph who was a defendant in that claim would have been available for the trial.

The district court, in considering "the weight of the evidence", said:

> The jury could reasonably find that neither Cichanowicz and McLean had consciously failed to take reasonable measures to provide treatment for Lewis's serious medical condition.

(Dkt. 165, p. 3)   However, Dr. Joseph states:

> For a patient who is in pain, but not complying with security measures to be evaluated by an on-site medical professional, THE ONLY OPTION is to send them to the hospital for evaluation.

(Dkt. 156, ¶11) (emphasis added) Therefore, Cichanowicz and McLean were NOT following "prison policy" and they did, in fact, "consciously fail to take reasonable measures to provide treatment for Lewis's serious medical need, and the court's failure to allow Lewis to add his state-law claim back to his constitutional claim denied Lewis a fair trial.


Second:

> "The missing recordings, which McLean's treatment notes tell us that Cichanowicz viewed at some point, COULD HELP LEWIS AT TRIAL BY CORROBORATING HIS STATEMENTS THAT HE WAS IMMOBILIZED FOR TWO HOURS AND THAT HE CRIED AND BEGGED FOR HELP WHEN TALKING TO Cichanowicz and McLean.

(7th Cir. Opinion, Case No. 16-1220, Document 44, p. 16, 7-21-2017) (emphasis added).

20.

Once again the USCA was very clear as to what would help Lewis at trial by corroborating his statements that he sat unmoving and that he cried and begged for help when talking to the defendants — which, of course, they denied at trial. Lewis should have been given the missing video, or the court should have imposed the proper sanctions.

The district court's response to the spoliation issue is thus:

> Defendants have maintained throughout this litigation that the institution's surveillance system does not record during times when there's no movement, so there is no footage of the time that Lewis was motionless in his cell.

(Dkt. 172, p.4)

The district court has always missed the point, and does so again here. The USCA spotted the problem right on. Cichanowicz viewed the video of Lewis sitting up at 5:15am, and leaning forward to push the emergency button. So where is this video? Also, the defendants' claim has always been that Lewis was moving his arms. Any movement would have caused the camera to record — including when the defendants walked past Lewis's cell window, as seen in the video. Where is the video?

Despite Lewis's insistance that Cichanowicz viewed the video at 5:15am, which he would have had to download to view since he left Lewis's cell at around 6:15am and viewed the video afterwards, the defendant's NEVER addresses this issue. It's as if they believe that by ignoring this question, it doesn't exist.

The USCA calls the defendants' actions "puzzling":

> "Their failure to act is all the more puzzling given the indication in McLean's treatment notes that, 30 minutes after visiting Lewis, Cichanowicz called McLean to tell her that he had watched recorded video from Lewis's cell and had confirmed that he had been sitting motionless on his bed since 5:15am. NEITHER OF THESE DEFENDANTS HAS ACKNOWLEDGED THIS VIDEO OR THEIR APPARENT CONVERSATION ABOUT IT."

( U.S.CA Decision Case No. 16-1220, Document 44, p. 14, Filed 7-21-2017).

And "troubl[ing]":

> On a closing note, we are troubled by the failure to pre-
> serve the video from Lewis's cell recorded between 5:15am
> (when he sat up) and 7:12am (when the clips provided by
> the defendants begin).

Id. at 16.

The court continues with:

> Nonetheless, plaintiff's counsel requested the pattern jury in-
> struction on spoliation, which would have advised the jurors
> that they could assume that the footage would have been un-
> favorable to defendants if they found that defendants had inten-
> tionally destroyed or caused the destruction of the footage in
> bad faith. See Dkt. 133, at 3. I deemed that instruction in-
> appropriate here, because neither of the two defendants was
> involved in any decision to destroy video footage.

(Dkt. 172, p. 4)

Here, the court is being presumptuous. There has never been anything that
would suggest who, if anyone, was responsible for the "destroyed video
footage", or even if the video was "destroyed". The defendants have always
ignored the question of the video.

Also, Lieutenant Cichanowicz was the Shift Supervisor. The court cannot
say definitively whether or not he had a hand in the destruction of the
video. The district court should have found it "troubling" that the video
footage, of a motion-activated camera, starts at 7:12 am when if the
video had went back even 30 seconds — given Lewis's immobility — it would
have been known whether Lewis was indeed "crying and begging for help"

The court continues:

I determined that the "requested spoliation instructions as to the missing surveillance footage [would] not be included in the post-trial instructions. But to ensure that defendants d[id] not capitalize on the absence of that video, [I] prohibited defendants from making any argument that Lewis was able to move during the time period in question." DKT. 142, at 1-2. DEFENDANTS ABIDED BY THIS INSTRUCTION AT TRIAL AND DID NOT DISPUTE THAT LEWIS WAS ACTUALLY IMMOBILIZED BY PAIN DURING THE PERIOD IN QUESTION.

Id., at 4-5.

First, the USCA said that the missing footage would do two things. Corroborate the fact that Lewis was immobilized, and that he cried and begged for help when talking to Cichanowicz and McLean. If the defendants would have abided by the court's instruction that would have satisfied one of the two things the USCA said the video would have corroborated. The defendants were given free reign to dispute the fact that Lewis cried and begged for help — and they repeatedly denied this charge.

Second, the defendants continuously said that Lewis was able to move and they therefore did not believe he had a medical need. In fact, while the court claims, in this decision, the defendants abided by his instruction not to dispute the fact that Lewis was immobilized by pain — the court states in the January 30, 2019 Order:

> Both Cichanowicz and McLean TESTIFIED THAT THEY HAD OBSERVED LEWIS MOVE HIS EXTREMITIES, SO THEY KNEW THAT HE WAS NOT PARALYZED.

(Dkt. 165, p. 3)

This is a shocking admission from a court that now claims that the defendants abided by his instruction.

Therefore, when the court did not order the defendants to turn over the video footage; or when it did not issue a spoliation sanction consistent with what the USCA said the missing video would have shown, then

the court denied Lewis the opportunity to have a fair trial.

D. Lewis Had Reason To Believe He Could Not Fire His Attorney In The Middle Of Trial.

The district court held that:

> It is true that litigants should generally communicate to the court through their attorneys. But a litigant has [the] absolute right to fire his attorney at any time. Deciding to terminate one's attorney and proceed pro se is the type of issue that a litigant can raise with the court directly, as it determines whether the attorney will continue to serve as an intermediary between the litigant and the court. If Lewis wished to terminate his attorney midway through trial, he needed to tell me.

(Dkt. 172, pp. 5-6)

First, Lewis reiterates that because of the court's recent rulings he believed he had to go through his attorney to raise any issues with the court.

Second, Lewis's only other experience with a trial - of any sort- was the one which landed him in prison. Prior to the START of trial, in the only appearance Lewis had made in the court since his preliminary hearing, Lewis tried to fire his attorney and the following took place.

The Clerk: Recalling State of Wisconsin versus James Lewis. Case number 12CF93.

Ms Lewis: Sara Lewis for the state.

Mr. Lang: Attorney David Lang on behalf of James Lewis. James Lewis is present, your honor.

The Court: Okay

Mr. Lang: Your honor, I did take an offer to Mr. Lewis. In that regards, the conversation got quite heated back there with Mr. Lewis. I believe Mr. Lewis wants to make a statement to the court.

The Defendant: Yes, I do, sir.

Mr. Lang: I believe Mr. Lewis doesn't want me to represent him. I--

The Defendant: I don't feel Mr. Lang is representing my best interest, your honor. I would like him to withdraw from the case. I want new counsel appointed.

The Court: Sir, the court's ready to call the jury in and the court's --

The Defendant: I don't think I've had enough amount of time to speak with my attorney. I've been here -- I've been incarcerated 16 and a half months.

The Court: Exactly.

The Defendant: This is the second time I've seen my attorney. WE HAVEN'T DISCUSSED MY CASE AT ANY POINT AND TIME. I'd like — he's not prepared.

The Court: Counsel, you're prepared to try the case?

Mr. Lang: I'm prepared. I met with him on Saturday, too. We went through a lot of stuff. There are some differences that we have in communication as to what evidence there is back there. I am his first attorney but --

The Defendant: I do not feel comfortable with Mr. Lang representing me at this time.

The Court: He's ready, prepared to try your case since you've been apparently in custody for that length of time.

The Defendant: I --

The Court: Listen to me.

The Defendant: Yes, sir.

The Court: The court's going to bring the jury in about one o'clock. We're going to try the case at one. We're going to bring the jury in. The Court doesn't find cause to appoint another lawyer.

The Defendant: My attorney is suppose to be a representative of me, your honor.

The Court: And he is.

The Defendant: It's my life. And he's not willing to fight for me.

The Court: Of course he is. He has an obligation to bring back offers to you.

The Defendant: He also has an obligation, your honor, to do the things I ask him to do. HE'S NOT EVEN WILLING TO VISIT ME.

The Court: You know what, sir? He's got the law license, you don't. He knows a lot more about these things than you do.

The Defendant: We're talking about my life, not his. At the end of the day he's going to go home to his family. I'm looking at spending the rest of my life incarcerated. My life is more important than his life.

The Court: Thank you. We'll see you at one. Enjoy your lunch.

(End of Proceedings) (emphasis added)

( Court transcript, State v. Lewis, 12CF93, May 20, 2013, Am, Appendix pp. A1-A4 )

26.

Lewis made clear to the court that for 16½ months his attorney saw him twice (the second time was the Saturday prior - when he brought Lewis a plea deal), that they had never discussed the case (Lewis wrote his attorney a very long detailed letter, that his attorney used information from to try the case), that he was not going to be comfortable going to trial with the lawyer, and that his life was on the line. The attorney informed the court he and Lewis had just had a heated argument. The court's response — he has the license, he knows more than you, we're going to trial at one o'clock.

Similarly, Lewis had an attorney, Mr. Cornia, who NEVER visited him, NEVER responded to letters or family calls, contacted Lewis once to inform him of the deposition and once when the court ordered him to after Lewis filed the motion to reinstate the state-law claim.

And although the court said Lewis would be "free to end representation", the court said Lewis would be unlikely to get another lawyer, that Lewis "must permit his lawyer to exercise professional judgment to determine which matters are appropriate to bring to the court's attention" and that Lewis "should be prepared to accept the strategic decisions made by his lawyer even if he disagrees with some of them". (DKt. 113) In other words, "He's the one with the law license, not you," "He knows a lot more about these things than you." - SO SHUT UP.

After Lewis's previous experience in trying to fire an attorney <u>Before</u> trial, and given the court's position that Lewis had to go through his attorney to address the court — it is not unreasonable to believe he could not fire his attorney <u>DURING</u> trial.


## II.  THE JURY VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE, AND/OR OTHER ERRORS WERE MADE IN THE CONDUCT OF TRIAL.

A motion for a new trial may be based on a claim that the verdict was against the weight of the evidence, that damages were excessive or inadequate, that evidence was improperly rejected, that the jury instructions were erroneous, or other errors were made in the conduct of trial. See <u>RUFFIAN v. FULLER</u>, 125 F. Supp. 2d 105, 109-10 (S.D.N.Y. 2000) (granting

new trial where jury's verdict against prisoner was against the weight of the evidence in light of medical evidence, "frankly incredible" of officers that they did not see how he was injured, and the fact that crucial portion of surveillance tape was destroyed).

The court said that although Lewis did not make the argument, it would consider whether the jury verdict was against the weight of the evidence. (DKt. 165, p. 3). However, Lewis made this argument in his motion for a new trial. (DKt. 155, pp. 25-26).

The court, for the purpose of Lewis's motion, assumed that Lewis had a serious medical need, and the defendants knew of it. (DKt. 165, p. 3) The critical question for the court was "whether Cichanowicz and McLean did not consciously fail to take reasonable measures to provide treatment for Lewis's serious medical need". Id.

The court said, "Both Cichanowicz and McLean testified they observed Lewis move his extremities, so they knew he was not paralyzed." Id. Based on this, "The jury could reasonably find that neither Cichanowicz and McLean had consciously failed to take reasonable measures to provide treatment for Lewis's serious medical need." Id.

Even without Dr. Joseph's "unequivocal opinion" that Lewis should have been taken to the hospital, the court based its opinion on the fact that "Both Cichanowicz and McLean testified they had observed Lewis move his extremities," Id. This, even though the court had "prohibited defendants from making any argument that Lewis was able to move during the time period in question," DKt. 172, pp. 4-5, which is the time Cichanowicz and McLean came to Lewis's cell.

When coupled with "the fact that crucial portion of surveillance tape was destroyed" RUFFIAN, 125 F. Supp. 2d 105, 109-10, then the Court should conclude that the jury verdict was against the weight of the evidence, and/or there were other errors made in the conduct of the trial.

✳ ✳ ✳ ✳ ✳

Plaintiff-Appellant reserves the right to supplement his brief if new evidence becomes available.

CONCLUSION

FOR ALL the foregoing reasons, the plaintiff-appellant, James A. Lewis, respectfully requests that this Court set aside the verdict against Lewis, vacate the district court's judgment in favor of the defendants, remand the case back to the district court for a new trial, and/or grant Lewis whatever relief the Court deems appropriate.

Signed this ___ day of _____, 2019.

Respectfully Submitted

James A. Lewis #486324
W.S.P.F.
P.O. Box 1000
Boscobel, WI 53805

CERTIFICATION OF COMPLIANCE

I hereby certify that this brief and appendix conforms to the rules contained in Fed. R. App. Proc. 32(a)(7)(b). The length of this brief is 8562 words.

*James Lewis*
James A. Lewis #486324

CERTIFICATE OF SERVICE

I certify that on _____, 2019 this brief and appendix was sent to the United States Court of Appeals for the Seventh Circuit, with a copy served on the Defendants-Appellees by having said copies placed in the United States mail, postage pre-paid, addressed as follows:

Wisconsin Department of Justice
~~Assistant Attorney~~ Luke N. Berg
P.O. Box 7857
Madison, WI 53707-7857

Respectfully Submitted this ___ day of _____, 2019.

*James Lewis*

James A. Lewis #486324
W.S.P.F.
P.O. Box 1000
Boscobel, WI 53805

APPENDIX

# TABLE OF CONTENTS TO APPENDIX

| | | Page |
|---|---|---|
| W/D | ORDER ENTERED MARCH 6, 2019 | 1 |
| W/D | ORDER ENTERED JANUARY 30, 2019 | 7 |
| W/D | ORDER ENTERED JANUARY 14, 2019 | 11 |
| W/D | AMENDED JUDGMENT JANUARY 9, 2019 | 13 |
| W/D | ORDER ENTERED JANUARY 29, 2018 | 14 |
| | UNITED STATES COURT OF APPEALS DECISION JULY 21, 2017 | 16 |
| | UNITED STATES COURT OF APPEALS ORDER JUNE 24, 2016 | A1 |
| W/D | JUDGMENT DATED JANUARY 7, 2016 | A3 |
| W/D | ORDER AND OPINION JANUARY 6, 2016 | A4 |
| W/D | ORDER MAY 20, 2015 | A18 |
| W/D | OPINION AND ORDER OCTOBER 29, 2014 | A22 |
| W/D | OPINION AND ORDER OCTOBER 8, 2014 | A25 |
| | PARTIAL TRANSCRIPT STATE v. LEWIS MAY 20, 2013 | ATTACHMENT A-1 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES A. LEWIS,

                Plaintiff,

    v.

ANGELA McLEAN and
JOSEPH CICHANOWICZ,

              Defendants.

ORDER

14-cv-280-jdp

---

Plaintiff James Lewis, who is now appearing pro se, has filed a supplement to his original post-trial motion asking me to set aside the judgment entered by this court on January 8, 2019, after a jury trial on his Eighth Amendment claims against prison staff. *See* Dkt. 155 (Lewis's original motion to set aside verdict) and Dkt. 164 (supplement to that motion). I addressed Lewis's original motion in a January 30, 2019 order. Dkt. 165. In that order, I explained that I would not award him a new trial under Federal Rule of Civil Procedure 59(a) because the jury verdict was not against the clear weight of the evidence and the trial was not unfair to Lewis. That order was docketed the same day that Lewis filed his supplement, and I had not yet received that supplement at the time I issued the order. Lewis then filed a motion for reconsideration of my January 30 order, Dkt. 168, arguing that I was premature in ruling on his original motion to set aside the verdict before the 28-day window for filing a Rule 59 motion elapsed.

I have already addressed the issues raised in Lewis's original Rule 59 motion, Dkt. 155, and I will not repeat that analysis here. In this order, I address the additional arguments Lewis makes in his supplement to his original Rule 59 motion and in his motion for reconsideration. Dkt. 164 and Dkt. 167. Again I conclude that Lewis is not entitled to a new trial, which may

be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Davis v. Wisconsin Dep't of Corr.*, 445 F.3d 971, 979 (7th Cir. 2006) (citations and internal quotation marks omitted).

## A. Supplement to Rule 59 motion

In his January 30 supplement to his Rule 59 motion, Lewis says that I "erred in not allowing Lewis to reinstate his state-law [medical malpractice] claim and sanction for spoliation." Dkt. 164, at 1. Had he gone to trial on his medical malpractice claim, Lewis says, the defendant on that claim—Dr. Meena Joseph—would have been at trial, and her testimony could have been used to impeach defendant McLean on the Eighth Amendment claim. *Id.* at 3. Lewis also says that he would have had a better chance of prevailing on the medical malpractice claim, because defense counsel argued that defendants' actions may have been negligent but did not arise to a constitutional violation. *Id.*. As for the spoliation issue, Lewis says that the video surveillance would have shown him crying and begging for help, and would have discredited McLean's testimony by showing that she visited his cell only one time. *Id.*

Regarding the state-law medical malpractice claim, I did not prevent Lewis from reinstating it. On March 5, 2018, when Lewis was still represented by recruited counsel, Magistrate Judge Stephen Crocker directed him to state by March 26 whether he wished to reinstate his medical malpractice claim. Dkt. 117. Lewis never filed a response, and the claim was not reinstated. On November 13, 2018, while still represented by counsel, Lewis filed a motion without the assistance of his attorney asking for reinstatement of his state-law claim and for spoliation sanctions against the defendants for missing surveillance video footage. Dkt. 121. I cannot consider pro se motions when the party is represented by counsel, so I asked

plaintiff's counsel to address the issues Lewis raised. Dkt. 122. On November 20, plaintiff's counsel filed a response that stated: "After consultation with Mr. Lewis, we will be withdrawing his Motion to reinstate the state medical malpractice claim. Mr. Lewis still has concerns about a missing video, however, opposing counsel and I have spoken and will continue to work on this issue." Dkt. 135. I had no reason to doubt plaintiff's counsel's representation that Lewis had agreed not to proceed on the medical malpractice claim until Lewis's post-trial motions.

In his supplement, Lewis contends that I should have discounted his counsel's representation on November 20 and instead treated his pro se motion to reinstate as properly filed. But I had no reason to think that plaintiff's counsel's later-filed statement wasn't accurate. Nor would it be proper for me to entertain pro se filings submitted by a represented party.

Lewis contends that his counsel represented him on his federal claim only. He says that at "[t]he court only recruited counsel for the federal lawsuit and Lewis only signed a retainer for the federal suit. Therefore, Lewis was representing himself in the state-law claim [and was] entitled to file the state-claim on his own." Dkt. 164, at 2; *see also* Dkt. 167, at 3. That is not accurate. I recruited counsel to represent Lewis in all of his claims before this court arising out of the events at issue in this case—federal and state alike. Lewis had an opportunity to reinstate his state-law claim, but declined to do so. *See* Dkt. 135. Lewis suggests that when his counsel failed to respond to Magistrate Judge Crocker's March 5, 2018 order, his counsel "waived his right to represent Lewis on this issue; therefore, . . . Lewis's state[-law] claim was in his own hands, as his attorney gave up all rights to represent Lewis on that claim." *Id.* Again, that is not how litigation in this court works. A client may fire his attorney at any time, but an attorney's failure to respond to an order does not "waive" his representation on the claims at issue.

Lewis also contends that I "should have queried Lewis as to if it was his wish not to raise the state[-law] claim; and [asked him] why after being so adamant in the past [about bringing the state-law claim], he had a sudden change of mind." *Id.* at 3. But again, in light of plaintiff's counsel's statement on November 20 that Lewis was withdrawing his motion to reinstate the state medical malpractice claim, I had no reason to suspect that Lewis and his counsel were not on the same page. And even if I had, it would not have been appropriate for me to insert myself into their attorney-client relationship by second-guessing Lewis's counsel's representations. If Lewis was dissatisfied with his attorney, he was free to fire him at any point during or prior to trial. But I cannot second-guess counsel on the many decisions made in the lead-up to trial.

As to the spoliation issue, Lewis says that I erred by declining to impose spoliation sanctions against defendants based on their failure to retain surveillance footage of the hours before Lewis was removed from his cell on February 8, 2014. Defendants have maintained throughout this litigation that the institution's surveillance system does not record during times when there is no movement, so there is no footage of the time that Lewis was motionless in his cell. Nonetheless, plaintiff's counsel requested the pattern jury instruction on spoliation, which would have advised the jurors that they could assume that the footage would have been unfavorable to defendants if they found that defendants had intentionally destroyed or caused the destruction of the footage in bad faith. *See* Dkt. 133, at 3. I deemed that instruction inappropriate here, because neither of the two defendants was involved in any decision to destroy video footage. I determined that the "requested spoliation instructions as to the missing surveillance footage [would] not be included in the post-trial instructions. But to ensure that defendants d[id] not capitalize on the absence of that video, [I] prohibited defendants from

making any argument that Lewis was able to move during the time period in question." Dkt. 142, at 1–2. Defendants abided by this instruction at trial and did not dispute that Lewis was actually immobilized by pain during the period in question.

Lewis does not explain why this stipulation was inadequate to address his concerns. Instead, he focuses on what the video would have shown had it been preserved and produced. He says that the footage would have shown that he was crying and begging for help, and that McLean only visited his cell once. But that the surveillance video would have shown these things does not mean that the jury's verdict went against the clear weight of the evidence or that its absence rendered the trial unfair. Lewis's dissatisfaction with my handling of the spoliation issue is not a sufficient basis for a new trial.

## B. Motion for reconsideration

In his motion for reconsideration of my order denying his original Rule 59 motion, Lewis contends that one of the statements I made in that order contradicts other instructions I gave him over the course of this litigation. Specifically, he points to my statement in a previous order suggesting that "[i]f Lewis wished to proceed pro se on the second day of trial, he should have brought that issue to my attention at that time, not in a post-trial motion." Dkt. 165, at 3. Lewis says that he did not think he was permitted to bring such matters to my attention directly in light of my earlier admonition in response to his pro se motion that Lewis should "refrain from filing directly with the court now that he has counsel." Dkt. 167, at 2 (quoting my order at Dkt. 122). It is true that litigants should generally communicate to the court through their attorneys. But a litigant has an absolute right to fire his attorney at any time. Deciding to terminate one's attorney and proceed pro se is the type of issue that a litigant can raise with the court directly, as it determines whether the attorney will continue to serve as an

intermediary between the litigant and the court. So if Lewis wished to terminate his attorney midway through the trial, he needed to tell me.

Lewis asks me to hold a hearing on why his counsel "failed to inform the court about Lewis's desire for self-representation." *Id.* at 4. But as I have already explained, ineffective assistance of counsel is not a basis for altering or setting aside a judgment under Rule 59. *See* Dkt. 160, at 1–2 and Dkt. 165, at 2.

For those reasons, am denying Lewis's motion to set aside the verdict.

ORDER

IT IS ORDERED that:

1.  Plaintiff James A. Lewis's supplement to his motion to alter or amend the judgment, Dkt. 164, is DENIED.

2.  Plaintiff's motion for reconsideration, Dkt. 167, is DENIED.

Entered March 6, 2019.

BY THE COURT:

/s/
_____

JAMES D. PETERSON
District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES A. LEWIS,

  Plaintiff,

  v.                                                        ORDER

ANGELA McLEAN and                                          14-cv-280-jdp
JOSEPH CICHANOWICZ,

  Defendants.

Plaintiff James Lewis, who is now appearing pro se, has filed a post-trial motion asking me to set aside the judgment entered by this court on January 8, 2019, after a jury trial on his Eighth Amendment claims against prison staff. Dkt. 155. Lewis filed his motion while he was still represented by counsel, so I could not properly consider it. But because the motion indicated that there had been a breakdown in the attorney-client relationship, I asked Lewis's counsel to clarify his continued representation of Lewis. Dkt. 160. Lewis's counsel has now withdrawn from the case, Dkt. 161, so I can address Lewis's motion.

In his motion, Lewis asks me to do three things: (1) set aside the January 8, 2019 jury verdict finding defendants not liable for violating his Eighth Amendment rights; (2) grant him a new trial; and (3) hold a hearing on the conduct of his counsel. I denied Lewis's request for a hearing on the conduct of his counsel in a previous order. Dkt. 160. But the issue whether to set aside the verdict and hold a new trial remains unresolved. For the reasons stated below, I will deny Lewis's motion.

I construe Lewis's motion as a motion for a new trial under Federal Rule of Civil Procedure 59(a). Under Rule 59(a), "[a] new trial may be granted if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Clarett v. Roberts*, 657

7

F.3d 664, 674 (7th Cir. 2011) (citations omitted). "A new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Davis v. Wisconsin Dep't of Corr.*, 445 F.3d 971, 979 (7th Cir. 2006) (internal quotation marks omitted). "Although the court examines the evidence to determine whether the jury's verdict was based on that evidence, the court does not make credibility determinations or weigh the evidence." *Whitehead v. Bond*, 680 F.3d 919, 925 (7th Cir. 2012).

Here, the majority of Lewis's arguments in favor of setting aside the jury verdict focus on his allegation that he received ineffective assistance of counsel. *See* Dkt. 155, at 9–26. But a civil litigant has no constitutional right to counsel, let alone effective assistance of counsel. *Wolfolk v. Rivera*, 729 F.2d 1114, 1119–20 (7th Cir. 1984). It follows that ineffective assistance of counsel is not a basis for altering or setting aside a judgment under Rule 59. *See Dupree v. Laster*, 389 F. App'x 532, 534 (7th Cir. 2010) ("[T]here is no Sixth-Amendment right to effective assistance of counsel in a civil case, so [plaintiff's] dissatisfaction with counsel's performance does not warrant a new trial."); *see also Stanciel v. Gramley*, 267 F.3d 575, 580–81 (7th Cir. 2001).

The only argument that Lewis makes that *doesn't* concern the effectiveness of his counsel concerns his alleged request on the second day of trial to represent himself and conduct his own cross-examination of defendant Angela McLean. According to Lewis, he told his counsel "to ask the court if he could cross-examine McLean himself" on the morning of January 8. Dkt. 155, at 18. Lewis says that later, just as trial was about to start, his counsel told him that "the judge would not allow it." *Id.* at 19. Lewis says that "the court erred when it did not hold a colloquy to find out what Lewis's issues were when it refused to allow Lewis to represent

himself and cross-examine McLean." *Id*. But I never received any request from Lewis or his counsel indicating that Lewis wished to conduct the cross-examination himself. Nor does the transcript indicate that anyone ever made such a request. If Lewis wished to proceed pro se on the second day of trial, he should have brought that issue to my attention at that time, not in a post-trial motion.

Although Lewis does not specifically make this argument, I have also considered whether the jury verdict is against the weight of the evidence. In considering this question, I must view the evidence in the light most favorable to the prevailing parties. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). I conclude that the jury's verdict is well-supported by the evidence. I will assume, for purposes of this motion, that Lewis proved that had a serious medical need, and that defendants knew of it. The critical question is whether a reasonable jury could find that Cichanowicz and McClean had not demonstrated deliberate indifference. Or, as the jury instructions now phrase the issue, whether Cichanowicz and McClean did not consciously fail to take reasonable measures to provide treatment for Lewis's serious medical need.

Cichanowicz testified that he sought guidance from the Health Services Unit, which McClean provided. McClean testified that she wanted to render assistance to Lewis, but that security concerns prevented her from entering Lewis's cell. Both Cichanowicz and McClean testified that they had observed Lewis move his extremities, so they knew that he was not paralyzed. There was no indication that he had lost consciousness or that he was bleeding, circumstances that, by prison policy, would have prompted an immediate cell entry. The jury could reasonably find that neither Cichanowicz and McClean had consciously failed to take reasonable measures to provide treatment for Lewis's serious medical need.

Because Lewis has not shown that the jury's verdict resulted in a miscarriage of justice, his motion for a new trial is denied.

## ORDER

IT IS ORDERED that plaintiff James A. Lewis's motion to alter or amend the judgment, Dkt. 155, is DENIED.

Entered January 30, 2019.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

4

10

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES A. LEWIS,

Plaintiff,

v.                                                          ORDER

ANGELA McLEAN and                                14-cv-280-jdp
JOSEPH CICHANOWICZ,

Defendants.

Plaintiff James Lewis has filed a pro se motion in which he asks the court to: (1) set

aside the January 8, 2019 jury verdict finding defendants not guilty of violating Lewis's Eighth

Amendment rights; (2) grant him a new trial; and (3) hold a hearing on the conduct of his

counsel. Dkt. 155.

I cannot consider a pro se motion while Lewis is still represented by counsel. Although

Lewis's motion makes clear that Lewis is dissatisfied with his counsel, Lewis does not say that

he has fired his counsel. And his counsel has not moved to withdraw. I will order counsel to

inform the court whether he still represents Lewis.

If counsel withdraws from representation, I will address Lewis's motion on the merits,

but only as to the sufficiency of the evidence and errors that Lewis says were committed by the

court. Most of Lewis's motion concerns alleged errors committed by counsel, which is outside

the scope of a motion to alter or amend the judgment under Federal Rule of Civil Procedure

59. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (the question under Rule 59 is

"whether the verdict is against the weight of the evidence . . . or . . . for other reasons, the trial

was not fair to the moving party" (quoting *EEOC v. Century Broadcasting Corp.*, 957 F.2d 1446,

1460 (7th Cir. 1992))). Because a civil litigant has no constitutional claim for ineffective

assistance of counsel, *Wolfolk v. Rivera*, 729 F.2d 1114, 1119 (7th Cir. 1984), a party may not

use Rule 59 to challenge his counsel's performance. *See, e.g., Dupree v. Laster*, No. 02-CV-1059,

2008 WL 5381949, at *1 (S.D. Ill. Dec. 23, 2008), *aff'd*, 389 F. App'x 532 (7th Cir. 2010).

If Lewis wishes to raise any other alleged errors by the court, he may supplement his

motion after the representation issue is resolved. But he should bear in mind that any motion

brought under Rule 59(a) must be brought within 28 days of the entry of judgment, so by

February 6, 2019, at the latest.

## ORDER

IT IS ORDERED that:

1. Lewis's counsel must inform the court by January 16, 2019, whether he continues
   to represent Lewis.

2. Plaintiff James A. Lewis's request for a hearing on the conduct of counsel is
   DENIED. The court will defer consideration of the rest of Lewis's motion until the
   status of Lewis's representation is resolved.

Entered January 14, 2019.

BY THE COURT:
/s/

JAMES D. PETERSON
District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES A. LEWIS,

       Plaintiff,

                              Case No. 14-cv-280-jdp

   v.

ANGELA MCLEAN, MEENA JOSEPH,
PAUL BROWN-LUCAS, JOHN HACKETT,
CHRISTOPHER FOLEY, JOSEPH CHICHANOWICZ,
BRENT BROWN, JONI SHANNON-SHARPE and
THOMAS TAYLOR,

       Defendants.

---

## AMENDED JUDGMENT IN A CIVIL CASE

---

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of defendants:

(1) dismissing plaintiff James A. Lewis' claims against Meena Joseph, Paul Brown-Lucas, John Hackett, Christopher Foley, Brent Brown, Joni Shannon-Sharpe and Thomas Taylor;

(2) dismissing plaintiff's state-law medical malpractice claim without prejudice to his refiling them in state court.

IT IS FURTHER ORDERED AND ADJUDGED that judgment is entered in favor of defendants Angela McClean and Joseph Cichanowicz in accordance with the jury's verdict.

Approved as to form this ___8 7H___ day of January, 2019.

_____
James D. Peterson
District Judge

_____     ___1/9/19___
Peter Oppeneer                      Date
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES A. LEWIS,

                    Plaintiff,

          v.                                              ORDER

ANGELA MCLEAN and JOSEPH                                  14-cv-280-jdp
CICHANOWICZ,

                    Defendants.

---

This case is back before this court on remand from the Seventh Circuit, which reinstated pro se plaintiff James A. Lewis's Eighth Amendment deliberate indifference claims against defendants and suggested that I reassess my decision to relinquish jurisdiction over the state-law medical malpractice claim against defendant Angela McLean. Dkt. 111. In an August 24, 2017 order, I stayed the proceedings to recruit counsel for Lewis. Dkt. 112.

The court has now located counsel. Attorney Reed Cornia of the law firm Cornia Law, LLC, has agreed to represent Lewis, with the understanding that he will serve with no guarantee of compensation for his services. It is the court's intention that the scope of representation extends to proceedings in this court only.[1]

Lewis should understand that because he is now represented in this case, he may not communicate directly with the court from this point forward. He must work directly with his lawyer and must permit his lawyer to exercise professional judgment to determine which

---

[1] "Proceedings in this court" include all matters leading up to a final judgment on the merits, the filing of a notice of appeal, if appropriate, and ensuring that all steps are taken to transfer the record to the Court of Appeals for the Seventh Circuit.

matters are appropriate to bring to the court's attention and in what form. Lewis does not have the right to require counsel to raise frivolous arguments or to follow every directive he makes. He should be prepared to accept the strategic decisions made by his lawyer even if he disagrees with some of them. If Lewis decides at some point not to work with this lawyer, he is free to end the representation, but he should be aware that it is unlikely that the court will recruit another lawyer to represent him.

## ORDER

IT IS ORDERED that the clerk of court is directed to set a telephone conference before Magistrate Judge Stephen Crocker to reopen discovery, determine whether Lewis wishes to reassert his medical malpractice claim, and set a schedule for trial.

Entered January 29, 2018.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

15

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1220

JAMES A. LEWIS,

*Plaintiff-Appellant,*

*v.*

ANGELA MCLEAN, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 14 CV 280 — **James D. Peterson**, *Chief Judge.*

ARGUED APRIL 20, 2017 — DECIDED JULY 21, 2017

Before MANION and ROVNER, *Circuit Judges,* and COLEMAN,
*District Judge.*[*]

ROVNER, *Circuit Judge.* James Lewis, a Wisconsin prisoner,
claimed in this action under 42 U.S.C. § 1983 that staff at the

---

[*] The Honorable Sharon Johnson Coleman, of the Northern District of
Illinois, sitting by designation.

EXHIBIT  1

AA 16

Wisconsin Secure Program Facility violated the Eighth Amendment by delaying medical attention for a painful back condition and then using excessive force when eventually taking him to the hospital. Lewis also claimed that two of the defendants, a nurse and a physician, committed malpractice under state law. The district court granted summary judgment for the defendants on the constitutional claims and relinquished supplemental jurisdiction over the state-law claim, and Lewis appeals. We conclude that a jury reasonably could find that two of the defendants were deliberately indifferent to Lewis's serious medical need.

## I.

The facts are largely undisputed, and we recount them, as we must at this stage of the proceedings, in the light most favorable to Lewis, noting disputes where relevant. In February 2014, Lewis was an inmate in the Wisconsin Secure Program Facility in Boscobel, Wisconsin. On February 8, he woke up at approximately 5:15 a.m. and experienced a sharp pain shooting from the base of his neck to his tailbone when he attempted to get out of bed. On account of the pain, he could neither lie back down or stand up. He remained immobilized by pain until approximately thirty minutes later, when at 5:39 a.m., he leaned forward just far enough to press the emergency call button on the wall of his cell. Lewis was housed in segregation (the reason is not disclosed in the record and when asked at oral argument the state did not know), and the guard who answered the call looked at the live video feed from the security camera in Lewis's cell and saw him sitting on the bed. The guard asked what the emergency was, and Lewis replied

that he was suffering from extreme pain in his back that left him unable to move.

The guard relayed this information to Lieutenant Joseph Cichanowicz, a security supervisor. After some time passed, Cichanowicz went to Lewis's cell, where Lewis explained that he was in terrible pain and could not stand up or lie back down. Lewis told Cichanowicz that he needed a nurse. After another ten or fifteen minutes passed and no nurse appeared, Lewis carefully eased himself forward again to push the emergency call button and request medical assistance. Sometime thereafter, Cichanowicz visited Lewis's cell with Nurse Angela McLean. According to McLean's progress report, she visited Lewis's cell at approximately 6:05 a.m., although in her answers to interrogatories she claimed that she went to his cell at 6:30 a.m. When Lewis saw McLean he told her that he was experiencing "terrible pain in his back" and "couldn't move." Prison policy discourages staff from examining an inmate in his cell, so McLean told Lewis that guards would escort him to the infirmary after head count, which was typically conducted at 6:15 a.m. McLean and Cichanowicz added, however, that Lewis would first have to stand with his back to the cell door so that he could be cuffed from behind through a slot in the door. Lewis again told them that he was in terrible pain in his back and neck and that he could not move or stand. Cichanowicz replied that he must be able to stand because he had pressed the emergency call button. Lewis then demonstrated that he could lean forward slightly to press the call button, and told them yet again that he was unable to stand or move.

Cichanowicz warned Lewis that if correctional officers had to be sent into the cell without first shackling Lewis that they would throw him to the ground and cuff him from behind, but that if he would come to the cell door they could cuff him from the front through the slot in the door. When Lewis replied that he was unable to stand or to reach the slot, Cichanowicz told him to get on his knees and crawl to the door. Lewis again told them he was in severe pain and unable to move. McLean reiterated to Lewis that if he wanted help he needed to follow Cichanowicz's orders, and then they walked away. The head count occurred as scheduled at approximately 6:15 a.m., but no one came to check on Lewis or take him to the infirmary.

After Cichanowicz and McLean left Lewis's cell, Cichanowicz viewed the video footage from Lewis's cell. Around 6:40 a.m., Cichanowicz told McLean that Lewis had not moved from a seated position on his bed since 5:15 a.m., but she still did nothing. Close to an hour later, Sergeant Wayne Primmer heard from other staff that Lewis was complaining about being in pain and unable to stand. Primmer checked the live video feed from Lewis's cell and saw him edge himself off the bed, fall to the floor on his knees, and then fall over onto his side on the floor. Lewis then cried out and pulled a blanket over himself. Primmer contacted Lieutenant Joni Shannon-Sharpe and briefed her about Lewis's earlier encounter with Cichanowicz and his continuing complaints of pain and inability to stand or walk. Primmer added that Lewis now was lying on the floor.

Shannon-Sharpe went to Lewis's cell at approximately 7:30 a.m. Like Cichanowicz, she told Lewis that guards could not enter the cell to take him to the infirmary unless he was

restrained. Lewis repeated that he could not reach the door because of excruciating pain in his back, and also told her that Cichanowicz told him no one would help him unless he crawled to the cell door and that being on the floor was increasing his pain. Shannon-Sharpe then conferred with McLean, and someone (we are not told who) directed McLean to contact the on-call physician, Dr. Meena Joseph.

McLean telephoned Dr. Joseph around 7:40 a.m.—over an hour and a half after Lewis had told her and Cichanowicz that he was in severe pain and could not move. Dr. Joseph directed that Lewis be taken to a hospital, and Shannon-Sharpe gathered five guards, two of them with medical training, to transport Lewis. They entered his cell at 7:58 a.m., restrained him, placed him in a wheelchair, searched him with a hand-held metal-detector (after abandoning the effort to force him into a standing position for a search when Lewis screamed that they were causing him extreme pain), lifted him into a van, and drove him to a local hospital. Lewis was admitted to the emergency room at 8:53 a.m. Doctors gave him morphine for his back pain, Ativan for his agitation, and diagnosed him with muscle spasms of the neck and upper back and myalgia (muscle pain). An hour later, Lewis was able to stand and walk again. He was prescribed ibuprofen and a muscle relaxant, and was discharged from the hospital at 10:24 a.m.

Lewis filed this suit two months later, naming as defendants Lieutenants Cichanowicz and Shannon-Sharpe, Nurse McLean, Dr. Joseph, and the five guards who removed him from his cell. He claimed that all of the defendants had shown deliberate indifference to his severe back pain by delaying his access to medical care, and that Shannon-Sharpe and the five

guards had been indifferent to his pain because they restrained him and did not take him to the hospital on a stretcher. Lewis also claimed that Shannon-Sharpe and the guards had used excessive force when cuffing him and transporting him to the hospital. Additionally, he asserted state-law medical malpractice claims against Nurse McLean and Dr. Joseph.

During discovery Lewis asked the district court to recruit counsel. The court declined after expressing doubt about the complexity of the medical issues and noting that Lewis had "not shown that the legal and factual difficulty of the case actually exceed his ability to prosecute it." Although Lewis obtained his medical records and the incident reports from February 8, he encountered difficulty getting the video from that day. He asked for "[a]ll video footage of the Plaintiff in his cell on February 8, 2014," but the defendants released only twenty-four minutes of clips run together into a single file, which Lewis could watch by contacting the prison's complaint examiner. The first eighteen minutes show snippets of what occurred in the cell between 7:12 and 8:00 a.m., including Lewis sliding off his bed to the floor; the last six minutes show Lewis being removed from the cell.

Lewis moved to compel discovery, explaining that he believed additional video evidence existed because of a notation Nurse McLean had written in her treatment notes from February 8. According to that notation, Cichanowicz had called her at 6:40 a.m (thirty minutes after she and Cichanowicz had met with Lewis) and said that recorded video from his cell showed Lewis sit up "from lying position" at 5:15 a.m. and "then not move again" except when "leaning forward to push intercom button." In response, their lawyer insisted

2 |

that the defendants were "not in possession of any other video evidence depicting Lewis on the date of the subject incident." The defendants later submitted a declaration from Douglas Konichek, who maintains the prison's video-monitoring system, explaining that the in-cell cameras do not record sound and "do not record during times when there is no movement." According to Konichek, the prison's digital video recorders automatically overwrite the oldest recording on the hard drive "when the drive's storage capacity is reached, and thus all recordings are overwritten unless someone downloads a recording ... and saves it on a separate database." Konichek is not specific in the declaration about the storage capacity of the hard drive but does state that the "earliest recordings" available when the declaration was filed were from 20 days earlier. His declaration does not explain why the prison saved video of Lewis's removal from his cell but not video covering the time frame referenced in McLean's treatment notes—video apparently showing Lewis sitting immobile for nearly 25 minutes before he managed to reach the emergency call button.

Before the district judge ruled on the motion to compel or Lewis's renewed motion for counsel, the parties filed cross-motions for summary judgment. Lewis relied on documents obtained during discovery, including incident reports, responses to interrogatories, and McLean's treatment notes, along with his verified complaint (the equivalent of an affidavit for purposes of summary judgment, *see* 28 U.S.C. § 1746; *Devbruw v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013)). In his complaint, Lewis explains that when he talked to Cichanowicz and McLean he was "sobbing and crying" because of his back pain and the "frustration of trying to get them to understand"

his need for medical care. Cichanowicz's response, avers
Lewis, was to tell him to "crawl to the door" on his knees. At
that point, Lewis says in his complaint, he "finally shouted,
'What part of I can't move don't y'all understand?'" Then, after
Cichanowicz and McLean had departed and he realized he
"would not get help," he "eased" himself from the bed to the
floor "in the hope of being able to make it to the door." But
once his knees hit the floor, Lewis recounts in his complaint,
"the pain immediately increased" and he collapsed to the
ground. Lewis emphasized Cichanowicz's admission in
response to an interrogatory that he "could have instructed an
emergency cell extraction" of Lewis at 6:00 a.m He did not do
so, Cichanowicz insists in that response, because Lewis "did
not appear to be in medical distress." Lewis also maintained
that the guards who had transported him used excessive force
because they restrained him, moved his limbs, made him stand
up, and did not place him on a stretcher. And he argued that
Nurse McLean and Dr. Joseph had committed medical mal-
practice by not ensuring that he was treated promptly and
transported appropriately.

The defendants asserted that Lewis could not establish an
Eighth Amendment violation based on deliberate indifference
to a need for medical care because he lacked evidence of a
serious medical need and because they were making "mean-
ingful and reasoned decisions and following the institution
policies and procedures that were designed to protect both the
staff and inmates." The "undisputed evidence," according to
the defendants, establishes that Lewis was not taken to the
infirmary and treated when he first complained of pain only
because he "refused repeated requests by the officers for him

to present his extremities to the cell trap doors." As evidence of this "refusal to be restrained," the defendant guards submitted declarations averring that they had seen him move his arms and legs.

Shannon-Sharpe and the defendant guards also contended that the force used in restraining and taking Lewis to the hospital was minimal and necessary. They submitted the six minutes of video of the cell extraction as evidence that ""the officers entered the cell in a calm and directed manner, and did not '*throw*' themselves upon Lewis or 'twist' or 'snatch' his legs" as he alleged in his complaint. As for the claim of medical malpractice, Dr. Joseph and Nurse McLean asserted that Lewis lacked expert testimony establishing the standard of care, which, in any event, they had satisfied.

Among the documents submitted by the defendants is an incident report by Primmer, the sergeant who alerted Shannon-Sharpe after seeing Lewis on the floor of his cell around 7:20 a.m. Primmer wrote that he "informed Lieutenant Cichanowicz of the situation," but Cichanowicz's declaration does not mention this. In his declaration, Cichanowicz does not deny watching the video recording of Lewis sitting in his cell from 5:15 to 6:40 a.m. (indeed, he fails to mention it at all); he also fails to mention that he called Nurse McLean and told her about it, as documented in McLean's treatment notes. Instead, Cichanowicz simply repeats in his declaration that he never ordered an emergency cell extraction because he "did not observe a medical emergency that required an emergency extraction." And in her declaration, McLean similarly avers that, after meeting with Lewis around 6:00 a.m., she "did not believe Lewis had an urgent medical need that required

No. 16-1220

emergency assistance." She, too, is silent about the account in her progress notes of the telephone call from Cichanowicz.

The district court denied Lewis's renewed request for counsel and entered summary judgment for the defendants. The court acknowledged that Lewis was in pain while restrained and transported, but reasoned that the undisputed evidence establishes that only "a modest amount of force" was used, and none of it was applied "maliciously or sadistically for the purpose of inflicting pain." The court further reasoned that, even if Lewis's back pain was a serious medical need, a jury could not reasonably find from the evidence "that defendants took longer than was necessary to assess plaintiff's medical issue and get him treatment" or that they "treated him unnecessarily roughly in restraining him." Finally, the district court relinquished supplemental jurisdiction over Lewis's claim of medical malpractice.

## II.

With the assistance of court-appointed counsel on appeal, Lewis now argues that summary judgment was inappropriate on his Eighth Amendment deliberate indifference claim and that the district court should have recruited counsel to assist him with obtaining necessary discovery to support that claim. Lewis has narrowed his arguments on appeal to focus primarily on his claim of deliberate indifference against McLean and Cichanowicz.

The Eighth Amendment's proscription against "unnecessary and wanton infliction of pain" is violated when prison officials demonstrate "deliberate indifference to serious medical needs" of prisoners—whether the indifference "is

manifested by prison doctors in response to prison needs or by prison guards in intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. Thus, a prisoner must first establish that his medical condition is "objectively, 'sufficiently serious,'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and second, that prison officials acted with a "sufficiently culpable state of mind," *id.*, at 834 (citations omitted)—i.e., that they both knew of and disregarded an excessive risk to inmate health. *see id.* at 837; *see also Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

As for the objective component, we conclude that there is enough evidence to support a finding that Lewis's medical condition—his muscle spasm and the accompanying back pain—was serious. A medical need is sufficiently serious if the inmate's condition "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. Moreover, a "medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *see also Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). The defendants no longer appear to be contending that Lewis's condition was not serious. We assume given the excruciating pain that Lewis described being in as well as the ultimate diagnosis of a muscle spasm treated with morphine that Lewis has established that he had a serious medical condition. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th

Cir. 2012) (concluding that plaintiff alleged serious medical condition by stating in complaint that "he was in pain" from wound he believed "was becoming infected").

We thus move to the question whether Lewis presented enough evidence of deliberate indifference to survive summary judgment. As discussed above, counsel for Lewis has wisely limited his deliberate indifference claim primarily to McLean and Cichanowicz . Any discussion of the remaining defendants in Lewis's brief is limited. In any event, we agree with the district court that a jury could not reasonably find that Lieutenant Shannon-Sharpe, Dr. Joseph, and the guards who transported Lewis from his cell were deliberately indifferent in assessing Lewis's medical condition or in restraining and transporting him to the emergency room. The evidence at summary judgment shows that Shannon-Sharpe immediately went to talk to Lewis after learning of his distress. Within ten minutes of her arrival, Dr. Joseph had been called and directed that Lewis be taken to the emergency room. Shannon-Sharpe then assembled a team of guards who restrained Lewis and transported him to the emergency room. These defendants' response to Lewis's distress was reasonable, and the district judge correctly entered summary judgment in their favor.

The deliberate-indifference claim against Lieutenant Cichanowicz and Nurse McLean, however, is another matter. "A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury *or unnecessarily prolonged his pain,*" and "even brief, unexplained delays in treatment may constitute deliberate indifference." *Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015) (emphasis added); *see also McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Grieveson v. Ander-*

27

A62

*son,* 538 F.3d 763, 779 (7th Cir. 2008); *Williams v. Liefer,*491 F.3d
710, 715–16 (7th Cir. 2007). Here, a jury reasonably could find
that Cichanowicz and McLean exhibited deliberate indifference
by delaying Lewis's treatment for approximately one and a half
hours—the time that passed between their learning of Lewis's
condition and Dr. Joseph's directive prompting action—thus
causing Lewis unnecessary suffering.

Rather than provide a sensible explanation for their
inaction, Cichanowicz and McLean blame Lewis for the delay.
They assert in their brief that it is irrelevant whether McLean
should have known that Lewis was unable to follow com-
mands because she was "assessing and responding to the
circumstances as they unfolded." We reject this characteriza-
tion of the evidence. By contending that they were entitled to
do nothing because Lewis failed to comply with their orders (a
shift in their characterization of the evidence in the district
court, where they insisted that Lewis bore responsibility
because he "refused" to comply) Cichanowicz and McLean are
asking us to construe the evidence *against* Lewis rather than in
his favor and thus attempting to turn summary judgment on
its head. *See Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014)
("We must ... construe the record in the light most favorable to
the nonmovant and avoid the temptation to decide which
party's version of the facts is more likely true.").

Construed in the light most favorable to Lewis, the evi-
dence at summary judgment shows that Lewis experienced
severe back pain from 5:15 a.m. until after he received a
morphine injection at the hospital approximately 4 hours later;
that he told Cichanowicz and McLean around 6:00 a.m.; that
his back pain was severe and that he could not reach the cell

door; and that he started sobbing and begged Cichanowicz and McLean for help after they had told him that he would not receive treatment unless he came to the door to be restrained. Yet Cichanowicz did nothing to help Lewis, and McLean likewise did nothing until Shannon-Sharpe's involvement prompted her to call Dr. Joseph. Their failure to act is all the more puzzling given the indication in McLean's treatment notes that, 30 minutes after visiting Lewis, Cichanowicz called McLean to tell her that he had watched recorded video from Lewis's cell and had confirmed that he had been sitting motionless on his bed since 5:15 a.m. Neither of these defendants has acknowledged this video or their apparent conversation about it, and certainly they do not suggest that what Cichanowicz saw on the video reinforced their purported belief that Lewis could get to the door and was stubbornly refusing to do so. This evidence, when construed in Lewis's favor, does not square with the defendants' insistence on appeal that they were working with Lewis and attempting to assist him given his inability to comply with their demands on account of his crippling pain.

Furthermore, these two defendants have never explained why Sergeant Primmer's report to Cichanowicz and Shannon-Sharpe that Lewis was prone on the floor prompted Shannon-Sharpe, a supervising officer who held the same rank as Cichanowicz, to spring into action while Cichanowicz continued to do nothing. In their declarations, Cichanowicz and McLean both aver that they did not believe Lewis needed emergency assistance, but a jury reasonably could disbelieve them given Dr. Joseph's unequivocal opinion that Lewis should be taken to the emergency room and the disparity

29

between Cichanowicz's inaction and the initiative demonstrated by Shannon-Sharpe. Moreover, Cichanowicz has never stated that his inaction was based on any medical opinion expressed by McLean, and McLean has offered no reason why she didn't call Dr. Joseph until an hour and a half after her first encounter with Lewis. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (explaining, when analyzing deliberate-indifference claim against nurse, that "a nurse confronted with an inappropriate or questionable practice should not simply defer to that practice, but rather has a professional obligation to the patient to take appropriate action, whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority" (internal quotation marks omitted)). Viewing the facts in the light most favorable to Lewis, Cichanowicz and McLean encountered an inmate in severe distress, sobbing in pain and complaining that he was unable to move, and did, literally, nothing. Indeed, had Sergeant Primmer not reported his own observations to Shannon-Sharpe, it is unclear if McLean and Cichanowicz would have assisted Lewis at all. *See Liefer*, 491 F.3d at 716 (upholding a jury's finding that prison employees had violated the Eighth Amendment by delaying treatment for an inmate's chest pain and causing him "six extra hours of pain and dangerously elevated blood pressure for no good reason").

In short, the disputed facts surrounding McLean and Cichanowicz's state of mind preclude a grant of summary judgment in their favor on Lewis's claim of deliberate indifference to a serious medical need. On remand, the district court may also wish to reassess its decision to relinquish jurisdiction over the medical-malpractice claim against McLean and



consider recruiting counsel to represent Lewis. *See Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) (explaining that district court should appoint counsel in potentially complex medical case, especially one that has advanced to discovery or trial); *Perez*, 792 F.3d at 785; *Greeno*, 414 F.3d at 658.

On a closing note, we are troubled by the failure to preserve the video from Lewis's cell recorded between 5:15 a.m. (when he sat up) and 7:12 a.m. (when the clips provided by the defendants begin). *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (noting that courts have imposed spoliation sanctions "where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent"); *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) ("A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant."). The missing recordings, which McLean's treatment notes tell us that Cichanowicz viewed at some point, could help Lewis at trial by corroborating his statements that he was immobilized for two hours and that he cried and begged for help when talking to Cichanowicz and McLean. And yet there is no explanation in the record why the defendants did not preserve this video but did preserve the six minutes of favorable video showing Lewis being removed from his cell. Konichek's declaration suggests that the recordings are stored for approximately twenty days before being erased, so whoever preserved the video of the cell extraction likewise could have saved the video covering the preceding 3 hours. On remand, the district court should consider reopening discovery so that Lewis—possibly aided by recruited coun-

sel—can successfully depose Cichanowicz and McLean as to
their state of mind and explore more fully whether additional
recordings exist and, if not, why more video was not pre-
served.

Finally, we reject the defendants' claim that they are
entitled to qualified immunity from Lewis's suit. Qualified
immunity protects government employees from liability for
civil damages for actions taken within the scope of their
employment unless their conduct violates "clearly established
... constitutional rights of which a reasonable person would
have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
Viewing the facts in the light most favorable to Lewis, we ask
whether the defendants violated a clearly established constitu-
tional right. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see
also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (establishing
that *Saucier*'s two-step sequence is not mandatory). In estab-
lishing whether a constitutional right has been clearly estab-
lished, it is unnecessary for the particular violation in question
to have been previously held unlawful. *Anderson v. Creighton*,
483 U.S. 635, 640 (1987). Instead, we ask whether the "contours
of the right [are] sufficiently clear that a reasonable official
would understand that what he is doing violates that right." *Id.*
It has long been clear that deliberate indifference to an inmate's
serious medical needs violates the Eighth Amendment. As for
whether Cichanowicz and McLean's delay in assisting Lewis
ran afoul of that clearly established right, as the discussion
above makes clear, when viewed in the light most favorable to
Lewis, his factual allegations could demonstrate a constitu-
tional violation. Thus, the defendants are not entitled to
immunity from suit.

18                                          No. 16-1220

### III.

The district court's judgment is VACATED to the extent that it grants summary judgment on the deliberate-indifference claim against Cichanowicz and McLean. On remand, the district court should consider whether to reinstate the medical-malpractice claim against McLean. The remainder of the judgment is AFFIRMED, and the case is REMANDED to the district court for further proceedings.



MANION, *Circuit Judge*, concurring. Because the court's opinion correctly applies our controlling precedent, I join it in full. A reasonable juror could conclude from the record presented that Lieutenant Cichanowicz and Nurse McLean delayed Lewis's treatment by more than an hour when they knew that he was in severe pain. Such a juror could infer deliberate indifference because both defendants were aware that the video feed from Lewis's cell showed that he had not moved since 5:15 a.m., but they still chose to do nothing rather than move the extraction process along. Under our case law, that would constitute deliberate indifference.

I write separately to make two points. First, I don't read the court's opinion as being contingent on the length of the delay the defendants caused. On another set of facts, an hour or so delay of treatment for a similar condition may not be enough to establish deliberate indifference. The particular facts of this case—namely that Cichanowicz and McLean appear to have confirmed that Lewis was suffering severe pain via the video feed—are what permit Lewis to survive summary judgment. Because a jury could view these facts as establishing the reckless state of mind necessary for liability, the court is correct to send this case to trial.

Second, and more broadly, although I think the court correctly applies controlling precedent, this case is a striking example of how far we have departed from the text of the Eighth Amendment. We should not forget that the Amendment prohibits the imposition of "cruel and unusual punishment." The deliberate indifference standard is at best tangentially related to the text. It seems quite unlikely to me that a prisoner who

34
A-3

was taken to the hospital and entirely cured within five hours of suffering pain has endured anything "cruel and unusual" in the context of the prison system. We should eventually return to faithfully applying the text of the Constitution.

With these reservations, I concur.

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

June 24, 2016

*By the Court:*

No. 16-1220

| | |
|---|---|
| JAMES A. LEWIS,<br>  *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Western District of Wisconsin. |
| *v.* | No. 14-cv-280-jdp |
| ANGELA McLEAN, *et al.,*<br>  *Defendants-Appellees.* | James D. Peterson,<br>*Judge.* |

## ORDER

After reviewing the briefs and the record on appeal, we have concluded that new briefs and oral argument would benefit the court. See FED. R. APP. P. 34(a)(2)(C). Accordingly, we have decided to recruit counsel for appellant James Lewis.

Recruited counsel shall brief any issues that counsel deems necessary to address after consultation with Mr. Lewis. In addition, the parties shall address the following questions in their briefs:

(1) Whether evidence in the record shows that muscular problems can prevent a person from moving in response to a demand from guards?

(2) Whether the record shows that guards knew—under the standards of *Farmer v. Brennan*, 511 U.S. 825 (1994)—that a person in Lewis's position would have been medically unable to comply with their requests?

The clerk of this court shall **STRIKE** the briefs already on file in this appeal. An order designating counsel and setting a briefing schedule will follow. Proceedings in this appeal are **SUSPENDED** pending further order of the court.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES A. LEWIS,

     Plaintiff,

v.

ANGELA MCLEAN, MEENA JOSEPH,
PAUL BROWN-LUCAS, JOHN HACKETT,
CHRISTOPHER FOLEY,
JOSEPH CICHINOWICZ, BRENT BROWN,
JONI-SHANNON-SHARPE and
THOMAS TAYLOR,

     Defendants.

JUDGMENT IN A CIVIL CASE

14-cv-280-jdp

---

     This action came for consideration before the court with District Judge
James D. Peterson presiding.  The issues have been considered and a decision has
been rendered.

---

     IT IS ORDERED AND ADJUDGED that judgment is entered in favor of

defendants:

     (2) granting Angela McLean, Meena Joseph, Paul Brown-Lucas, John Hackett,

Christopher Foley, Joseph Cichinowicz, Brent Brown, Joni Shannon-Sharpe and

Thomas Taylor's motion for summary judgment; and

     (3)  dismissing plaintiff's state-law medical malpractice claim without prejudice to

his refiling them in state court.

| /s/ | 1/7/2016 |
|---|---|
| Peter Oppeneer, Clerk of Court | Date |

A3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES A. LEWIS,

                        Plaintiff,

      v.

ANGELA MCLEAN, MEENA JOSEPH,
PAUL BROWN-LUCAS, JOHN HACKETT,
CHRISTOPHER FOLEY, JOSEPH CICHINOWICZ,
BRENT BROWN, JONI SHANNON-SHARPE, and
THOMAS TAYLOR,

                      Defendants.

OPINION & ORDER

14-cv-280-jdp

---

      Pro se plaintiff James A. Lewis suffered an episode of severe back pain while incarcerated at the Wisconsin Secure Program Facility, and this suit arises out of the response to that episode. Plaintiff alleges that several WSPF staff members were deliberately indifferent to his serious medical need and that they used excessive force in moving him for treatment. Plaintiff also alleges that the medical staff committed medical malpractice. He brings suit under 42 U.S.C. § 1983 for violations of his Eighth Amendment rights and state-law claims for medical malpractice.

      Now before the court are the parties' cross-motions for summary judgment and several additional motions by plaintiff. I will address all of these motions in this opinion, and I will grant defendants' motion for summary judgment on plaintiff's Eighth Amendment claims. With the Eighth Amendment claims out of the case, the basis for federal jurisdiction is gone, so I will exercise my discretion to dismiss plaintiff's state-law medical malpractice claim without prejudice.

A4

## UNDISPUTED FACTS

The parties' summary judgment submissions establish the following undisputed facts. Plaintiff was incarcerated at the Wisconsin Secure Program Facility when, on February 8, 2014, he awoke at approximately 5:30 a.m. with pain in his neck and back. He called for help using the emergency call button in his cell. At about 6:30 a.m., defendants nurse Angela McLean and Lieutenant Joseph C. Cichinowicz came to plaintiff's cell, planning to take him to the Health Services Unit. They told plaintiff to walk to the door so that they could restrain him for security purposes and transport him to the HSU. Cichinowicz told him that if he walked to the cell door, they would restrain his hands in front of his body, but if he did not, they would cuff him from the back. Cichinowicz further suggested that if plaintiff could not walk to the door, maybe he could kneel. Plaintiff maintained that he could not move, so McLean and Cichinowicz left.

A video recording shows the activities in plaintiff's cell beginning about 7:12 a.m., when plaintiff eased himself from his bed onto the floor and pulled a blanket from his bed to cover himself. Defendant Lieutenant Joni Shannon-Sharpe came to the cell and spoke with plaintiff about his pain, then left. A few minutes later, Shannon-Sharpe returned with another officer and asked plaintiff to remove the blanket. He complied.

The officers left again and returned just before 8:00 a.m. with defendants Thomas Taylor, Paul Brown-Lucas, John Hackett, and Christopher Foley planning to take plaintiff to the hospital. The officers told plaintiff that they were going to enter the cell to restrain him as he lay on the floor. They warned plaintiff that they were armed with a taser, and then they opened the door. Foley entered the cell and secured plaintiff's head and arms. Brown-Lucas and Hackett also entered the cell and restrained plaintiff's legs. Once plaintiff's arms and legs

2

were shackled, the officers sat plaintiff up and Brown-Lucas, who is a first responder, conducted a physical assessment of plaintiff's back. Defendant Brent Brown, who is also a first responder, was also in the cell for the assessment. Brown and Brown-Lucas did not find any traumatic injuries or deformities.

Defendants then informed plaintiff that they were going to put him into a wheelchair, and then into a van to drive him to the hospital. Plaintiff protested that he needed to lie flat on a stretcher to protect his neck and back. But defendants told him that the prison doctor, defendant Meena Joseph, had approved transporting him by van. Before leaving the prison, defendant Shannon-Sharpe ordered officers to stand plaintiff up to be searched for contraband. Defendants Taylor and Brown attempted to lift plaintiff into a standing position, but when he cried out in pain, they sat him back down and instead used a wand to search him.

Defendants then wheeled plaintiff to the van, and Taylor and Brown lifted plaintiff into the van from under his shoulders and his legs. They pulled him into the van face-up across the bench seat. They then drove him to the Gunderson Boscobel Area Hospital emergency room and assisted him out of the van. Medical records reflect that plaintiff arrived to the hospital at 8:53 a.m. He was diagnosed with muscle spasm and myalgia,[1] given pain medication, and discharged at 10:24 a.m. that day.

---

[1] The American Heritage Medical Dictionary defines myalgia as "[m]uscular pain or tenderness, especially when diffuse and nonspecific."

ANALYSIS

## A. Plaintiff's motion to amend the complaint to change one defendant's name

Plaintiff previously moved to amend his complaint to correct the names of two defendants. Dkt. 23. I granted his request in part, and sought additional information before changing Shawn Foley's name. Dkt. 25. Plaintiff responded with a letter, explaining that staff at the Wisconsin Secure Program Facility initially gave him the wrong name, but when he learned that the correct name was Christopher, he moved to amend his complaint. Dkt. 29. I will grant the motion and allow plaintiff to change Shawn Foley to Christopher Foley.

## B. Plaintiff's motions for reconsideration

### 1. Denial of leave to proceed on state law assault, battery, and negligence claims

I denied plaintiff leave to proceed on his state law claims of assault, battery, and negligence because he failed to comply with the notice of claim provisions in Wis. Stat. §§ 893.82(3) and (3m). Dkt. 15. Those statutes require a prisoner to serve written notice on the Attorney General and then wait until the Attorney General denies the claim or until 120 days pass before filing suit. Plaintiff wrote his notice to the Attorney General on March 21, 2014, and had it notarized. He mailed it on May 23, 2014. But plaintiff filed his complaint in this court on April 16, 2014, before the Attorney General denied the claim and long before 120 days had passed. Because plaintiff filed his complaint prematurely, I denied him leave to proceed on the claims of assault, battery, and negligence. (The notice of claim requirements do not apply to plaintiff's medical malpractice claim. Wis. Stat. § 893.82(5m).)

In his motion for reconsideration, plaintiff contends that his claims should not be time-barred because he never filed those claims in *state* court. According to plaintiff, his

4

A7

federal complaint merely gave me the option of considering those claims, but they should "not be construed as a filing." Dkt. 26, at 2. But the notice of claim requirements in Chapter 893 apply equally to actions that are filed in federal court and in state court. *See, e.g., Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010). When plaintiff filed his complaint in this court, alleging violations of both state and federal law, he "commenced" his action before the statutory prerequisites were satisfied.

Plaintiff contends, in the alternative, that he should be allowed to proceed on these claims because the Attorney General never responded to his March 23, 2014 notice, and more than 120 days passed before my order denying him leave to proceed. But the statutory language is clear: a "prisoner may not commence the civil action or proceeding until the attorney general denies the claim or until 120 days after the written notice." Wis. Stat. § 893.82(3m), *see also Badger Catholic*, 620 F.3d at 782 ("Wisconsin does not have a doctrine of constructive compliance; it requires strict performance of all statutory conditions."). Plaintiff commenced the action prematurely when he filed his complaint on April 16, 2014. My subsequent order issued October 8, 2014, does not give plaintiff a new commencement date.

Because plaintiff commenced this suit without satisfying the statutory prerequisites, plaintiff may not proceed on his state law claims of assault, battery, and negligence. His motion for reconsideration, Dkt. 26, is denied.

### 2. Grant of leave to file security policies under seal

In support of their motion for summary judgment, defendants relied in part on WSPF security policy documents, which they filed with a motion to seal. Dkt. 47. Plaintiff did not respond to this motion. In his order granting defendants' motion, Dkt. 67, the magistrate

judge accepted that disclosure of the policies posed a security risk. But he anticipated that sealing these documents would prevent plaintiff from preparing for trial, so he set out three options: (1) defendants could implement some procedure allowing plaintiff to read the policies; (2) the court could recruit counsel for plaintiff so that counsel could access them on plaintiff's behalf; or (3) the court could eschew reliance on the sealed documents in deciding the summary judgment motions. *Id.*

Plaintiff has asked me to reconsider the magistrate judge's decision to allow defendants to file the security policies under seal. Dkt. 70. I will deny plaintiff's motion because I will disregard the WSPF security policies in deciding the motions for summary judgment.

### 3. Denial of assistance recruiting counsel

Plaintiff also asks me to reconsider my decision denying him assistance recruiting counsel. Dkt. 70 and Dkt. 73. Plaintiff requested assistance recruiting counsel because he does not have a legal education and believes that he cannot navigate the complex issues in this case, including issues that require medical expertise. Dkt. 19. I previously denied plaintiff's motion because, at that point, he had failed to demonstrate that the issues exceeded his ability. Dkt. 25. In his motion to reconsider, plaintiff restates the same reasons for seeking the assistance of counsel. I will again deny his motion to appoint counsel.

Plaintiff has done a good job in representing himself on his Eighth Amendment claim. Although I am granting defendants' motion for summary judgment on that claim, I do not believe that counsel could have obtained a different result. But plaintiff's medical malpractice claim is a different matter. That claim would require plaintiff to marshal and present medical evidence, which would probably outstrip his abilities.

6

A9

I do not believe that plaintiff's malpractice claim is a particularly strong one. However, if I were to retain jurisdiction over the state-law medical malpractice claim, I would attempt to recruit counsel for plaintiff. But because I will dismiss the malpractice claim without prejudice, I will not recruit counsel. His motion for reconsideration is denied.

## C. Plaintiff's motion to compel discovery

### 1. Video of cell extraction

Plaintiff has moved under Federal Rule of Civil Procedure 37 to compel a video of defendants extracting him from his cell on February 8, 2014, and transporting him to intake. Dkt. 33. Plaintiff has had several opportunities to review the video from that day taken by the camera inside his cell. But he contends that he remembers another video being recorded by a hand-held camera during his cell extraction, and he has made several failed attempts to see it. Plaintiff claims that he first requested the video on October 8, 2014, but that his request was denied for security reasons. Plaintiff followed up with his request multiple times and was consistently denied access to the video. Defendants claim that there is only one video, the one from inside his cell, and that the additional recordings that plaintiff seeks do not exist. Dkt. 35, at 3.

Plaintiff contends that prison policy requires a separate video of planned use-of-force situations. But, as defendants plausibly explain, plaintiff was not in a planned use-of-force situation on the morning of February 8, 2014. Rather, defendants mounted a medical response that did not require a separate video, and thus defendants plausibly assert that there is no additional recording of the incident. Plaintiff has not adduced evidence to convince me otherwise, and the court cannot compel the production of a recording that does not exist. Plaintiff's motion concerning the video will be denied.

7

A10

### 2. Defendant Joseph's response to certain interrogatories

Plaintiff has also moved under Rule 37 to compel additional responses to four of the interrogatories that he served on defendants. Specifically, plaintiff seeks defendant Meena Joseph's response to some interrogatories that ask for her medical opinion about the treatment of persons suffering from back and neck pain.

Defendants have objected to these interrogatories on the grounds that they are vague and call for speculation. Defendants' objections are not well founded. Dr. Joseph is propounded as defendants' medical expert. As such, she would offer her opinions concerning the proper standard of care for a patient with plaintiff's symptoms, which is the general area of the objected-to interrogatories. Plaintiff's interrogatories may not be quite as pointed as ones from trained legal counsel. But plaintiff is not far off the mark, and Dr. Joseph's responses are evasive. I would grant plaintiff's motion to compel if I were retaining jurisdiction over plaintiff's medical malpractice claim. But because I am not retaining jurisdiction, there is no need for additional discovery on that claim.

Responses to the objected-to interrogatories are not necessary to plaintiff's Eighth Amendment case, where the issue is whether defendants were deliberately indifferent to plaintiff's serious medical need. I will assume for purposes of this motion that plaintiff's back spasms constituted a serious medical need that required treatment. But plaintiff cannot establish an Eighth Amendment violation by showing that he received sub-standard or negligent care. Defendants have adduced evidence that demonstrates that they were not deliberately indifferent to plaintiff's medical needs, and thus responses that would tend to show that defendants were careless or incompetent are immaterial to the Eighth Amendment claim. I will deny plaintiff's motion to compel further responses from Dr. Joseph as

unnecessary because I am dismissing his malpractice claim and granting summary judgment for defendants on his Eighth Amendment claims.

## D. Sanctions

Plaintiff has moved to sanction defendants under Federal Rule of Civil Procedure 37 for discovery abuses. Dkt. 79. Plaintiff argues that defendants' response to his motion to compel interrogatory responses, Dkt. 35, was inadequate enough to merit sanctions. Although I agree that Dr. Joseph's responses were evasive, sanctions would not be appropriate until the defendants violated a court order to supplement those responses. The motion for sanctions is denied.

## E. Summary judgment

The parties have filed cross motions for summary judgment on three issues: (1) whether defendants were deliberately indifferent to plaintiff's serious medical need; (2) whether they committed medical malpractice under state law; and (3) whether they used excessive force against him. Dkt. 42 and Dkt. 48. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and [a party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because there are cross-motions for summary judgment, I will "look to the burden of proof that each party would bear on an issue of trial; [and] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact" as to that question. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

### 1. Excessive force

Plaintiff accuses defendants Shannon-Sharpe, Foley, Brown-Lucas, Hackett, Brown, and Taylor of using excessive force against him when they restrained and transported him to

9

the hospital. The Eighth Amendment prohibits cruel and unusual punishment, including "maliciously and sadistically us[ing] force to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Plaintiff's theory is that any force that defendants used beyond helping him lay on a flat board and delivering him in that position to the hospital was excessive. However, "conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Thus, the question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320. To distinguish between those two, the court considers: (1) the need to apply force; (2) the relationship between the need to apply it and the amount of force used; (3) the injury that the force caused; (4) the threat to the safety of staff and inmates; and (5) any attempt to temper the severity of the force. *Id.* at 321.

In this case, defendants restrained and transported plaintiff from his cell to receive medical attention. They needed to use some level of force, because plaintiff was unable to move himself. And defendants were entitled to restrain plaintiff before moving him out of his cell. Defendants first asked plaintiff to come to the cell door so that they could handcuff his arms in front of his body. But plaintiff, who was then lying on the floor, could not get up to walk to the door. After explaining what they were about to do, defendants entered the cell to handcuff plaintiff's arms behind his back and shackle his legs. Once he was restrained, defendants Brown and Brown-Lucas physically examined plaintiff. They then lifted plaintiff and sat him a wheelchair. Defendants then attempted to stand plaintiff up to be strip searched, but they abandoned the attempt and wand-searched him instead. They then lifted

10

A13

him out of the wheelchair and into the van, and later out of the van and back into the wheelchair to enter the hospital.

I do not doubt that plaintiff was in pain and that it was uncomfortable to be restrained and moved while enduring back spasms. But plaintiff cannot make out an excessive force claim merely because he experienced pain while being taken for treatment. Plaintiff has adduced no evidence that any defendants used force maliciously or sadistically for the purpose of inflicting pain. Even if defendants were careless and inadvertently inflicted more pain than necessary, that would not be enough to constitute excessive force. And plaintiff has adduced no evidence even of carelessness. Defendants used a modest amount of force to restrain and move him to get him medical attention in the hospital. I will grant defendants' summary judgment on this claim.

## 2. Deliberate indifference to a serious medical need

Plaintiff also accuses defendants McLean, Joseph, Cichinowicz, Shannon-Sharpe, Foley, Brown-Lucas, Hackett, Brown, and Taylor of being deliberately indifferent to his back and neck pain. Although defendants responded to his call for help and took him to the hospital for diagnosis and treatment, plaintiff contends that they delayed assistance and increased his risk of harm by restraining him and then transporting him in a seated position instead of flat on his back.

Deliberate indifference to a serious medical need is a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" (internal quotation marks and citations omitted)). To prevail on his claim, plaintiff must demonstrate that: (1) he suffered an objectively serious medical condition, and (2) an official

11

**A14**

was deliberately indifferent to that condition. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007). The standard requires both an objectively serious condition and a subjectively culpable state of mind. *Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014) (internal quotation marks and citations omitted). Plaintiff's allegations of deliberate indifference are not enough at this point; he must also show with verifying evidence that defendants' actions caused him harm. *Liefer*, 491 F.3d at 714-15 (stating that the delay of treatment itself must have caused some degree of harm).

Plaintiff awoke with pain at approximately 5:30 a.m. and continued to suffer until he was treated at the hospital approximately three and one-half hours later. During those three and one-half hours, defendants monitored plaintiff and attempted to extract him from his cell to get him medical attention. He does not claim that defendants caused his injury or that they ignored his complaints of pain. Nor does plaintiff claim that the amount of time it took to get him treatment increased his pain level; he maintains only that his suffering was unnecessarily prolonged. He also alleges that the way that defendants restrained and positioned him while attempting to take him to the hospital caused additional pain.

But there is no evidence that defendants took longer than was necessary to assess plaintiff's medical issue and get him treatment. Nor is there evidence that defendants treated him unnecessarily roughly in restraining him. In fact, they attempted to accommodate his discomfort multiple times. They offered to handcuff him in the front instead of behind his back. And they opted to use a wand to search him while seated in lieu of conducting a full standing strip search. These uncontested facts do not support a conclusion that defendants

12

**A15**

were deliberately indifferent to plaintiff's pain. Accordingly, I will grant defendants summary judgment on plaintiff's deliberate indifference claim.[2]

### 3. Medical malpractice

Plaintiff claims that defendants McLean, a nurse, and Joseph, a doctor, committed medical malpractice by failing to respond to plaintiff's medical condition with reasonably careful and competent care. Because the incident underlying this claim is the same as that underlying plaintiff's constitutional claims, I could exercise supplemental jurisdiction over this state-law claim. 28 U.S.C. § 1367. However, because I am granting summary judgment for defendants on all of the federal claims, I may decline to exercise supplemental jurisdiction over the state-law claim and dismiss it without prejudice. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

Based on the record developed so far, I do not believe that plaintiff's malpractice claim is a strong one. Ultimately plaintiff was diagnosed with muscle spasms and received appropriate treatment. The decision to transport plaintiff by wheelchair and van, rather than immobilized on a stretcher, might have been risky (because defendants did not at that point know for sure whether he had a spine injury that might have been worsened), but it does not appear to have caused any enduring injury. But the record pertaining to the malpractice claim is not well developed, due in part to plaintiff's pro se status which has hindered his development of the expert evidence he would likely need.

Accordingly, in the interest of "judicial economy, convenience, fairness, and comity," I will decline to exercise jurisdiction over plaintiff's malpractice claim and dismiss it without

---

[2] Because I conclude that defendants were not deliberately indifferent, I need not address defendants' arguments that they enjoy qualified immunity for their actions.

prejudice. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). If plaintiff has a

good-faith basis for asserting claims of malpractice, plaintiff may refile this claim in state

court, subject to the requirements and limitations of Wis. Stat. § 893.55.


ORDER

IT IS ORDERED that:

1. Plaintiff's motion to amend his complaint to change Shawn Foley to Christopher Foley, Dkt. 29, is GRANTED.

2. Plaintiff's motion for reconsideration of the court order denying him leave to proceed on his state law claims, Dkt. 26, is DENIED.

3. Plaintiff's motion for reconsideration of the court order denying him assistance recruiting counsel, Dkt. 70, is DENIED.

4. Plaintiff's motion to compel, Dkt. 33, is DENIED.

5. Plaintiff's motion for sanctions, Dkt. 79, is DENIED.

6. Defendants' motion for summary judgment, Dkt. 48, is GRANTED. Plaintiff's motion for summary judgment, Dkt. 42, is DENIED, as described in the opinion. Plaintiff's state-law medical malpractice claim is DISMISSED without prejudice to plaintiff refiling the claim in state court.

7. Plaintiff's motion for denial of defendants' summary judgment motion, Dkt. 74, is DENIED.

Entered January 6, 2016.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

14

A17

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES A. LEWIS,

                Plaintiff,

    v.

ANGELA McLEAN, *et al.*,

                Defendants.

ORDER

14-cv-280-jdp

---

Pro se prisoner James A. Lewis has been granted leave to proceed on his deliberate indifference and excessive force claims and Wisconsin state law medical malpractice claims based on how Department of Corrections staff responded to plaintiff's report of back and neck pain between 5:30 a.m. and 8:53 a.m. on February 8, 2014. We held the telephone preliminary pretrial conference on December 10, 2014. Now plaintiff has filed a motion to amend his complaint and a motion for the appointment of counsel. He also has filed a proposed amended complaint.

In his motion to amend the complaint, plaintiff seeks to correct the case caption, changing the spelling of defendant Angela McClean's name to Angela McLean. This request is GRANTED.

Plaintiff also seeks to change the name of Shawn Foley to Christopher Foley. The court will STAY action on this request to give plaintiff a chance to explain *why* he wants to change Foley's first name to Christopher. "Shawn Foley" is the name given in plaintiff's original complaint, in defendants' answer and in the evidence submitted, and plaintiff does not present any evidence that this name is incorrect and he has not reported that he originally identified the wrong person. Plaintiff may have two weeks, until June 3, 2015 to supplement this request by explaining why this name change is necessary. Plaintiff does not need to file a new amended complaint just to change the first name in the caption; a letter explaining his request is enough.

A18

Along with his motion to amend the complaint, plaintiff has filed a proposed amended complaint. The court will accept the new complaint as the operative pleading because the only apparent changes are to the names of the defendants discussed above. There will be no need for the court to screen the amended complaint or for defendants to file an amended answer.

Turning to plaintiff's motion to appoint counsel, the court does not have the authority to "*appoint*" counsel to represent a pro se plaintiff in this type of a case; what the court does is try to recruit a lawyer who may be willing to volunteer as plaintiff's attorney in this case. In his motion, plaintiff says that he needs a lawyer because he has no legal education, the issues in this case are complex and will involve medical issues that will require expert testimony and will require discovery documents and depositions from a number of witnesses. At this point in the case, it is not clear that the medical issues raised in prisoner's claim actually are complex or in need of expert testimony, but they could be. More importantly, plaintiff has not shown that the legal and factual difficulty of the case actually exceed his ability to prosecute it. *Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007). Therefore, his motion to recruit counsel is DENIED WITHOUT PREJUDICE.

Plaintiff's case relies on facts regarding his requests for medical attention and defendants' responses in light of plaintiff's claim of acute neck and back pain one morning, where defendants got plaintiff to the hospital within 3½ hours. Plaintiff has personal knowledge of the facts and circumstances surrounding the lawsuit and he should already possess, or be able to obtain through discovery, the relevant documentation that he needs to prove his claims. Plaintiff is capable of narrating what happened (or didn't happen), when, where and who was involved. He should be able to obtain to his own records to corroborate this information, and he can request

2

A19

through discovery, other relevant documents such as staff reports.  The court will apply the appropriate law to these facts, even if plaintiff cannot provide the law on his own or does not understand how the law applies to his facts.

The court understands why plaintiff is concerned that he may not be able to litigate this case himself, he should know that he is in the same position as most of the 200+ other pro se litigants who filed lawsuits here in the past year, none of whom have legal training of any kind. So far, plaintiff is doing a fair job of representing himself.  His submissions are well written and he appears capable of following instructions and making intelligible arguments in his pleadings. In the absence of a need to recruit an attorney to help a pro se plaintiff who is really in over his head, this court does not attempt to recruit attorneys for the sole purpose of shifting to a lawyer the time and cost of contacting and paying expert witnesses or deposing witnesses.

The court is making litigating this case as easy as possible for plaintiff.  The court's procedures were explained in the December 15, 2014 written pretrial conference order, which is prepared for the very purpose of helping pro se litigants understand how their case will proceed and what their responsibilities are.  If at some point plaintiff does not understand something that is happening in this case, he may write to the court to request clarification.  Plaintiff is free to renew his motion for counsel at a later time if he actually becomes incapable of representing himself as the case proceeds.

3

A20

ORDER

It is ORDERED that:

1.  Plaintiff James A. Lewis's motion for leave to amend his complaint, dkt.
    23, is GRANTED IN PART and STAYED IN PART as described within
    the body of this order.  Plaintiff has until JUNE 3, 2015 to submit his
    explanation why this court should change defendant Shawn Foley's first
    name.

2.  Plaintiff's proposed amended complaint, dkt. 24, is accepted as the
    operative pleading in this case.

3.  Plaintiff's motion for assistance in recruiting counsel, dkt. 19, is DENIED
    without prejudice.

Entered this 20th day of May, 2015.

                            BY THE COURT:

                            /s/

                            STEPHEN L. CROCKER
                            Magistrate Judge

4

A21

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES A. LEWIS,

                          Plaintiff,                              OPINION & ORDER

    v.                                                            14-cv-280-jdp

ANGELA MCCLEAN, MEENA JOSEPH,
PAUL BROWN-LUCAS, JOHN HACKETT,
SHAWN FOLEY, JOSEPH C. CICHINOWICZ,
BRENT BROWN, JONI SHANNON-SHARPE,
and THOMAS TAYLOR,

                          Defendant.

---

On October 8, 2014, I issued an opinion and order granting pro se plaintiff James A. Lewis leave to proceed on his Eighth Amendment medical care and excessive force claims, as well as his state law medical malpractice claims. Dkt. 9. I denied plaintiff leave to proceed on his state law assault, battery, and negligence claims without prejudice to give him the opportunity to supplement his complaint and demonstrate that he served notice of those claims to the attorney general before initiating this action, as is required under Wis. Stat. § 893.82. One week after I issued the order, plaintiff submitted a response with evidence that he sent notice of his claims to the attorney general.

As I explained in the October 8 order, before he can initiate an action, plaintiff must submit written notice of his claims to the Wisconsin attorney general, stating the time, date, location and the circumstances of the events giving rise to the claims, and the names of people involved. § 893.82(3). Further, because plaintiff is a prisoner, he must wait to initiate the action until either his claim has been rejected by the attorney general or 120 days have passed from service of notice. § 893.82(3m).

A22

With his response, plaintiff filed a copy of the notice of injury and claim form, dated March 21, 2014, which he had notarized and sent. With the form, plaintiff filed his certified mail receipt. Plaintiff's response states that he sent the notice on March 23, 2014. According to plaintiff's certified mail receipt, the notice was sent on May 23, 2014. Regardless of which date is accurate, it appears from these documents that plaintiff did submit notice of his claims to the attorney general.

However, the next requirement under § 893.82 provides that a prisoner may not initiate an action "until the attorney general denies the claim or until 120 days after the written notice [] is served upon the attorney general, whichever is earlier." § 893.82(3m). Plaintiff does not suggest that he received a denial of the claim from the attorney general. Thus, to comply with § 893.82(3m), he would have to have waited 120 days after serving notice to file his complaint and initiate the action. Plaintiff filed his complaint on April 16, 2014. Whether the notice to the attorney general was sent on March 23 or May 23, plaintiff did not wait the requisite 120 days before filing his complaint. Therefore, he has not satisfied § 893.82 and he cannot proceed with his state law assault, battery, and negligence claims. Those claims will be dismissed from this case.

ORDER

IT IS ORDERED that plaintiff James A. Lewis is DENIED leave to proceed on his state law claims of assault, battery, and negligence. The claims are dismissed for failure to state a claim upon which relief may be granted. The case will continue on his Eighth Amendment

2

A23

medical care claims, his Eighth Amendment excessive force claims, and his state law medical malpractice claims, as articulated in the previous order, Dkt. 9.

Entered this 29th day of October, 2014.

BY THE COURT:


/s/
JAMES D. PETERSON
District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES A. LEWIS,

     Plaintiff,

     v.

ANGELA MCCLEAN, MEENA JOSEPH,
PAUL BROWN-LUCAS, JOHN HACKETT,
SHAWN FOLEY, JOSEPH C. CICHINOWICZ,
BRENT BROWN, JONI SHANNON-SHARPE,
AND THOMAS TAYLOR,

     Defendants.

OPINION and ORDER

14-cv-280-jdp

---

On February 8, 2014, pro se plaintiff James A. Lewis woke up in his prison cell with a sharp pain in his back. Because of the pain, he was unable to move and sought help from various prison officials. He later filed a proposed complaint under 42 U.S.C. § 1983 against those prison officials, alleging cruel and unusual punishment under the Eighth Amendment to the United States Constitution for their response and treatment of him. Dkt. 1. More specifically, plaintiff argues that officers used excessive force against him and demonstrated deliberate indifference to his serious medical needs. He also alleges assault, battery, negligence, and medical malpractice under Wisconsin state law.

Plaintiff has paid an initial partial payment of the filing fee. The next step is to screen plaintiff's complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915, 1915A. Having reviewed the complaint, I conclude that plaintiff has stated Eighth Amendment

A25

medical care and excessive force claims. He has also stated a medical malpractice claim under Wisconsin state law. The rest of plaintiff's state-law claims face a procedural hurdle: plaintiff must comply with the state's notice of claim requirements. I will defer my decision on whether he may proceed with them, giving plaintiff the opportunity to amend his complaint to address the notice of claim issue.

I draw the following facts from plaintiff's complaint.

## ALLEGATIONS OF FACT

Plaintiff is an inmate at the Wisconsin Secure Program Facility. He alleges that on February 8, 2014, he woke up there at 5:30 a.m. with a sharp pain shooting from the base of his neck, down his spine, to his tailbone. He was in such pain that it was difficult for him to move. He managed to press the emergency call button in his cell and spoke to an officer over the intercom system. That officer sent another officer to assist plaintiff. A few different prison officials came to plaintiff's cell, apparently to assess the situation, and left without assisting him. I do not understand plaintiff to be alleging that any of these officers violated his rights. Eventually, after plaintiff indicated that he could not move and needed medical assistance, defendants prison nurse Angela McClean and Lieutenant Joseph C. Cichinowicz came to his cell.

McClean told plaintiff that staff would bring him to the Health Services Unit to receive medical attention, but that he would need to be shackled before he could be transported. Cichinowicz told plaintiff that unless he came to the door to be shackled, they would "throw [him] down and cuff [him] from the back." He further suggested that

2

**A26**

if plaintiff could not walk to the door, he should get on his knees and crawl. After McClean and Cichinowicz left, plaintiff attempted to ease himself onto the floor and make his way to the door. He was then unable to move from the floor and lay there in a face-down position.

Later, more officers, including defendants Lieutenant Joni Shannon-Sharpe, and correctional officers Thomas Taylor, Paul Brown-Lucas, John Hackett, and Shawn Foley, came to the cell to tell plaintiff that he was going to the hospital. Because he could not move from the floor, the officers planned to come into the cell to shackle plaintiff. Plaintiff promised to hold as still as he could. Armed with a taser, they opened the door and Foley rushed into the cell and "threw himself" onto plaintiff's back to handcuff him. Brown-Lucas and Hackett "snatched and twisted" his legs to shackle them.

The officers then put plaintiff into a wheelchair, over his protests that he needed to lie flat on a stretcher to protect his neck and back. When plaintiff protested over the use of the wheelchair and van, the officers told him that the prison doctor said that he could go in the van, despite never examining plaintiff when he was in distress. (I understand plaintiff to be referring to defendant Meena Joseph when he refers to the prison doctor.) Before taking him out of the prison, Shannon-Sharpe ordered that plaintiff be stood up and handcuffed to the strip-search cage to be searched. Defendant correctional officers Brent Brown and Taylor lifted plaintiff from the wheelchair into a standing position, but when he cried out in pain, they abandoned the attempt and used a wand to check for contraband instead. They put him back in the wheelchair to transport him to a van.

3

Defendants Brown and Taylor moved plaintiff into the van by picking him up under his shoulders and his legs and pulling him across the bench seat on his back until he was in place. They then drove him to the Gunderson Boscobel Area Hospital emergency room. Plaintiff alleges that the hospital records reflect that he arrived at the hospital at 8:53 a.m., approximately and hour and a half after the I.C.E. records indicate. Plaintiff alleges that all of these actions exacerbated the pain he was in.

### ANALYSIS

I understand plaintiff to be bringing claims against defendants for violating his Eighth Amendment rights to adequate medical care and to be free from excessive force by prison officials. I also understand plaintiff to be bringing state law claims against defendants for medical malpractice, assault, battery, and negligence.

### A. Eighth Amendment Medical Care

Plaintiff claims that prison officials were deliberately indifferent to his need for medical assistance when he woke up suffering from back pain. I understand plaintiff to be alleging that prison officers recklessly disregarded a serious risk to plaintiff's health by taking too long to respond to his medical need, insisting that he move to the door of his cell to be shackled, despite being unable to move and in extreme pain. Then, in attempting to assist him, defendants further exhibited recklessness by allowing officers to climb on and wrench his back, contorting his limbs to shackle him, putting him in a wheelchair instead of on a backboard with support for his neck and back, attempting to stand him up and

4

strip search him, and pulling him into a van while he was in severe back pain. Plaintiff also notes that he did not arrive at the hospital until 8:53 a.m., suggesting that defendants took a long time to get him medical attention.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain" and violates the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer*, 511 U.S. at 847. To be deliberately indifferent, the defendants must have been aware of plaintiff's need for medical treatment but exhibited "subjective recklessness" in failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262 (7th Cir. 1997) (citations omitted). Inadvertent error, negligence, gross negligence, and ordinary malpractice are insufficient. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996); *Estelle*, 429 U.S. at 105-06 ("An inadvertent failure to provide adequate medical care cannot be said to constitute an 'unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' . . . Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

I understand plaintiff to be bringing the following Eighth Amendment medical care claims:

1. Defendant McClean refused to come into plaintiff's cell to help him and instead insisted that he be shackled and brought to the HSU to be seen;

2. Defendant Cichinowicz insisted that plaintiff come to the door of his cell to be shackled, telling plaintiff that the officers would throw him down and cuff him from behind if he did not, and suggesting that plaintiff get on his knees and crawl to the door;

3. Defendant Joseph approved the officers using a wheelchair and van to transport plaintiff, despite not examining him or diagnosing him.

4. Defendant Shannon-Sharpe instructed defendants Foley, Brown-Lucas, Hackett, Brown, and Taylor to use force to shackle and transport plaintiff in a wheelchair and van without properly supporting his neck and back, causing him increased pain, despite knowing that he was already in severe back pain.

I conclude that plaintiff may proceed on these claims. Plaintiff states that these actions all caused him increased pain beyond what he was already suffering. *Smith v. Knox County Jail*, 666 F.3d 1037, 1039-40 (7th Cir. 2012) ('[D]eliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim."); *Gutierrez*, 111 F.3d at 1373. Construing his complaint generously, plaintiff's allegations suggest that the officers acted with deliberate indifference to exacerbating his pain, although they were obviously aware of his distress. *See McGowan v. Hulick*, 612 F.3d 636 (7th Cir. 2010). Wrenching a person's back while it is already in distress for an unknown reason would likely cause increased pain. Given that the officers were attempting to help plaintiff by taking him to the hospital to receive care, plaintiff may find it difficult to prove his case at summary judgment or trial. He will need to present evidence that their actions were deliberately indifferent and not just incidental to their overall effort to attend to his medical need.

6

## B. State Medical Malpractice

Plaintiff asks that the court exercise supplemental jurisdiction over state law medical malpractice claims against defendants and medical professionals McClean and Joseph. I understand plaintiff to be alleging that: although he was complaining of back pain, defendants McClean and Joseph allowed him to be transported in a wheelchair and van, without first assessing his condition and without properly supporting his neck and back. Plaintiff bases these allegations on the same facts described above and relied on in his Eighth Amendment medical care claim.

Wisconsin law defines medical malpractice as the failure of each of the defendant medical professionals to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sheahan v. Suliene*, 12-cv-433, 2014 WL 1233700, *9 (W.D. Wis. Mar. 25, 2014) (internal citations omitted). To succeed on a medical malpractice claim in Wisconsin, plaintiff must prove that defendants breached their duty of care to him and he suffered an injury as a result. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. Unless the situation is one in which common knowledge affords a basis for finding negligence, medical malpractice cases require expert testimony to establish the standard of care. *Carney–Hayes v. Nw. Wis. Home Care, Inc.*, 2005 WI 118, ¶ 37, 284 Wis. 2d 56, 699 N.W.2d 524. Plaintiff need not file a notice of claim for his medical malpractice claims. Wis. Stat. § 893.82(5m).

As medical staff, McClean and Joseph owed plaintiff a duty of care. Plaintiff does not allege any tangible injury that he suffered as a result of defendants' actions; he instead asserts that those actions harmed him by exacerbating his pain. Construing plaintiff's claims

7

A31

generously, I will allow him to proceed on these state law claims. *Wade v. Castillo*, 658 F. Supp. 2d 906, 910 (W.D. Wis. 2009) ("The standard for medical malpractice is significantly lower than that for the Eighth Amendment."). Again, plaintiff will have to overcome the overall context in which defendants were attempting to assist plaintiff in his medical need by taking him to the hospital.

## C. Eighth Amendment Excessive Force

Plaintiff alleges that several defendants used excessive force against him by "throwing" themselves onto his back to shackle him, making him stand to be strip searched, and putting him into a wheelchair and then pulling him across the backseat of a van, while he was in obvious and extreme back pain. According to plaintiff, defendant officers Foley, Brown-Lucas, Hackett, Taylor, and Brown used physical force against plaintiff, while Lieutenant Shannon-Sharpe allowed or instructed them to do so. Notably, the officers were not using force to suppress a prison security risk like a disturbance or altercation; plaintiff was on the floor of his own cell, seeking medical assistance.

Excessive physical force constituting "the unnecessary and wanton infliction of pain" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (collecting cases). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The analysis has both an objective and a subjective component:

8

A32

whether, in the context of contemporary standards of decency, the alleged wrong was objectively harmful enough to establish a constitutional violation and whether the officers' subjective motivations were malicious and sadistic. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Where force is used maliciously and sadistically to cause harm, the standard of decency has been violated. *Hudson*, 503 U.S. at 9, *citing Whitley*, 475 U.S. at 327. Factors relevant to the analysis include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).

I understand plaintiff to be bringing the following Eighth Amendment excessive force claims:

1. Defendant Foley "threw himself" onto plaintiff's back to shackle his arms behind his back, which defendant Shannon-Sharpe allowed him to do, exacerbating his pain, despite knowing of his distress;

2. Defendants Brown-Lucas and Hackett "snatched and twisted" plaintiff's legs to shackle them, which defendant Shannon-Sharpe allowed them to do, exacerbating his pain, despite knowing of his distress;

3. Defendant Shannon-Sharpe instructed defendants Taylor and Brown to stand plaintiff up to be strip searched, exacerbating his pain, despite knowing of his distress; and

4. Defendant Shannon-Sharpe instructed defendants Taylor and Brown to transport plaintiff in a wheelchair and a van, pulling on and positioning his body in different ways, exacerbating his pain, despite knowing he was in extreme back pain.

9

A33

I conclude that plaintiff may proceed on these claims as well. Plaintiff states that when force was used against him, he was already incapacitated by extreme pain and in need of medical attention, lying face down on the floor. He claims that each use of force against him exacerbated his pain and harmed him by subjecting him to increased pain. *Gutierrez*, 111 F.3d at 1373. Again construing plaintiff's allegations generously, he has made out a plausible claim of excessive force. However, as is also noted above, the use of force in this case was in the context of attempting to assist plaintiff by taking him to the hospital for his back pain. Plaintiff will have to demonstrate that the force was excessive in this context in order to prevail on his claims.

### D. Assault, Battery, and Negligence

Plaintiff asks the court to exercise supplemental jurisdiction over state law claims of assault, battery, and negligence against defendants Shannon-Sharpe, Foley, Brown-Lucas, Hackett, Brown, and Taylor. Plaintiff bases these allegations on the same facts described above in the excessive force claim. The court need not determine the merits of these claims because plaintiff faces a procedural issue. Because plaintiff intends to sue state government official acting in the course of their duties, Wisconsin law requires him to file notice of claim with the Attorney General's office. *Estate of Hopgood ex rel. Turner v. Boyd*, 2013 WI 1, ¶ 20 n.11, 345 Wis. 2d 65, 825 N.W.2d 273 ("Serving notice of claim is an essential step in commencing an action."). Plaintiff must submit written notice of the claims stating the time, date, location and the circumstances of the events giving rise to the claims, and the names of people involved. *Id.* § 893.82(3). Because plaintiff is a prisoner, he cannot bring suit until

10

**A34**

the claim has been disallowed or rejected. Wis. Stat. § 893.82(3m).

In his complaint, plaintiff does not state whether he has filed a notice of claim that has been disallowed. Because this is a threshold requirement for his state law assault, battery, and negligence claims, I will defer my decision on whether to grant plaintiff leave to proceed on those claims and allow time for him to supplement his complaint.

## ORDER

IT IS ORDERED that:

1. Plaintiff James A. Lewis is GRANTED leave to proceed on the following claims:

    a. Eighth Amendment medical care claims against defendants Angela McClean, Meena Joseph, Joseph C. Cichinowicz, Joni Shannon-Sharpe, Shawn Foley, Paul Brown-Lucas, John Hackett, Brent Brown, and Thomas Taylor;

    b. State law medical malpractice claims against defendants Angela McClean and Meena Joseph;

    c. Eighth Amendment excessive force claims against defendants Joni Shannon-Sharpe, Shawn Foley, Paul Brown-Lucas, John Hackett, Brent Brown, and Thomas Taylor.

2. Plaintiff's request for leave to proceed on his state law claims of assault, battery, and negligence is DENIED without prejudice. Plaintiff has until October 22, 2014 to supplement his complaint with information about his compliance with notice requirements under Wis. Stat. § 893.82. If plaintiff does not submit a supplement to his complaint by that date, those state law claims will be dismissed.

3. For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that he has sent a copy to defendants or to defendants' attorney.

4. Plaintiff should keep a copy of all documents for his own files. If he is unable to use

11

A35

a photocopy machine, he may send out identical handwritten or typed copies of his documents.

5. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on defendants. Plaintiff should not attempt to serve defendants on his own at this time. Under the agreement, the Department of Justice will have 40 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiff's complaint if it accepts service for defendants.

6. Plaintiff is obligated to pay the unpaid balance of his filing fee in monthly payments as described in 28 U.S.C. § 1915(b)(2). The clerk of court is directed to send a letter to the warden of plaintiff's institution informing the warden of the obligation under *Lucien v. DeTella*, 141 F.3d 773 (7th Cir. 1998), to deduct payments from plaintiff's trust fund accounts until the filing fee has been paid in full.

Entered this 8th day of October, 2014.

BY THE COURT:
/s/
JAMES D. PETERSON
District Judge

12

A36

1            P R O C E E D I N G S

2            THE CLERK:  State of Wisconsin versus James

3    Lewis.  Case number 12CF93.

4            Appearances, please.

5            MS. LEWIS:  Sara Lewis for the state.

6            MR. LANG:  Attorney David Lang for and on

7    behalf of James Lewis.  James Lewis is in custody.

8            THE COURT:  Are we set for trial or what?

9            MR. LANG:  Judge, we are right now.  We've

10   been out in the hallway while the court was doing other

11   matters.  And we were talking.  And there was another

12   offer that was made.  I just haven't been able to relay

13   it to my client.

14           THE COURT:  Let's go off the record for a

15   second.  Let me see counsel in chambers.

16           (Discussion had off record.)

17           THE CLERK:  Recalling State of Wisconsin

18   versus James Lewis.  Case number 12CF93.

19           Appearances.

20           MS. LEWIS:  Sara Lewis for the state.

21           MR. LANG:  Attorney David Lang on behalf of

22   James Lewis.  James Lewis is present, your honor.

23           THE COURT:  Okay.

24           MR. LANG:  Your honor, I did take an offer to

25   Mr. Lewis.  In that regards, the conversation got quite

Attachment A-1

1   heated back there with Mr. Lewis.  I believe Mr. Lewis

2   wants to make a statement to the court.

3   THE DEFENDANT:  Yes, I do, sir.

4   MR. LANG:  I believe Mr. Lewis doesn't want me

5   to represent him.  I --

6   THE DEFENDANT:  I don't feel like Mr. Lang is

7   representing my best interest, your honor.  I would like

8   him to withdraw from the case.  I want new counsel

9   appointed.

10  THE COURT:  Sir, the court's ready to call the

11  jury in and the court's --

12  THE DEFENDANT:  I don't think I've had enough

13  amount of time to speak with my attorney.  I've been

14  here -- I've been incarcerated 16 and a half months.

15  THE COURT:  Exactly.

16  THE DEFENDANT:  This is the second time I've

17  seen my attorney.  We haven't discussed my case at any

18  point and time.  I'd like -- he's not prepared.

19  THE COURT:  Counsel, you're prepared to try

20  the case?

21  MR. LANG:  I'm prepared.  I met with him on

22  Saturday, too.  We went through a lot of stuff.  There

23  are some differences that we have in communication as to

24  what evidence there is back there.  I am his first

25  attorney but --

3

ATTACHMENT A-2

1    THE DEFENDANT:  I do not feel comfortable with

2    Mr. Lang representing me at this time.

3    THE COURT:  He's ready, prepared to try your

4    case since you've been apparently in custody for that

5    length of period of time.

6    THE DEFENDANT:  I --

7    THE COURT:  Listen to me.

8    THE DEFENDANT:  Yes, sir.

9    THE COURT:  The court's going to bring the

10   jury in about one o'clock.  We're going to trial in the

11   case.

12   Can they get up here at one o'clock?  Okay.

13   We're going to -- the court has something else to do.

14   We're going to try the case at one.  We're going to

15   bring the jury in.

16   The court doesn't find cause to appoint

17   another lawyer.

18   THE DEFENDANT:  My attorney is supposed to be

19   a representative of me, your honor.

20   THE COURT:  And he is.

21   THE DEFENDANT:  It's my life.  And he's not

22   willing to fight for me.

23   THE COURT:  Of course he is.  He has an

24   obligation to bring back offers to you.

25   THE DEFENDANT:  He also has an obligation,

4

334

Attachment A-3

1   your honor, to do the things I ask him to do.  He's not

2   even willing to visit me.

3           THE COURT:  You know what, sir?  He's got the

4   law license, you don't.  He knows a lot more about these

5   things than you do.

6           THE DEFENDANT:  We're talking about my life

7   not his.  At the end of the day he's going to go home to

8   his family.  I looking at spending the rest of my life

9   incarcerated.  My life is more important than his life.

10          THE COURT:  Thank you.  We'll see you at one.

11  Enjoy your lunch.


13              (End of proceedings.)

Attachment A 4